Archie S. Robinson, Esq. [SBN 34789]
asr@robinsonwood.com
ROBINSON & WOOD, INC.
227 North First Street
San Jose, CA 95113
Telephone: 408/298-7120
Facsimile: 408/298-0477

Attorneys for Plaintiff
DEBORAH J. THOMAS

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - OAKLAND DIVISION

DEBORAH J. THOMAS

Plaintiff,

vs.

THE WALT DISNEY COMPANY, WALT DISNEY STUDIOS, DISNEY PRESS, PIXAR ANIMATION STUDIOS, WALT DISNEY FEATURE ANIMATION, WALT DISNEY PICTURES, DISNEY ENTERPRISES, INC. and DOES 1 through 100, Inclusive,

Defendants.
_______________________________/

No. CV 07-04392 CW

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Date: January 31, 2008
Time: 2:00 p.m.
Dept: #2
Judge: Hon. Claudia Wilkin

# TABLE OF CONTENTS

I. Introduction . . . . . 1

II. Facts . . . . . 1

III. Thomas' Claims Against Defendants' Continuing Infringement Within the Previous Three Years Is Timely . . . . . 2

A. Continued showings of a movie in theaters and continued sales of DVDs are continuing wrongs and are not deemed a single act of infringement . . . . . 2

B. Continued showings of a movie in theaters and continued sales of DVDs are continuing wrongs and are not deemed a single act of infringement . . . . . 3

IV. Thomas' Story and Finding Nemo Are Sufficiently Similar to State a Claim for Copyright Infringement . . . . . 4

V. Thomas' Unfair Competition Claim Is Not Preempted . . . . . 10

VI. Thomas' Unfair Competition Claim Has Been Timely Brought Within the Four-year Limitations Period . . . . . 14

VII. Conclusion . . . . . 16

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

# TABLE OF AUTHORITIES

Cases


*Anderson v. Stallone*, 1989 WL 206431 (C.D. Cal.1989) . . . . . . . . . . . . . . . . . . . . . . . . 13

*Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327(1990) . . . . . . . . . . . . . 11

*Berkic v. Crichton*, 761 F.2d 1289 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bevan v. Columbia Broadcasting System, Inc.*, 329 F. Supp. 601 (S.D.N.Y. 1971) . . . . . 5

*Bridgeport Music*, 2006 WL 3720348 at *9 (M.D. Tenn. 2006) . . . . . . . . . . . . . . . . . . . . 4

*Cory Van Rijn, Inc. v. California Raisin Advisory Board*, 697 F.Supp. 1136 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

*Davies v. Krasna*, 245 Cal. App. 2d 535 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Design Art v. National Football League Properties*, Inc., 2000 WL 33151646 . . . . . . . . 14

*Faris v. Enberg*, 97 Cal.App.3d 309 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115 (N.D. CA 2001) . . . . . . . . . . . . . . 15

*Funky Films, Inc. v. Time Warner*, 462 F.3d 1072 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . 5

*Goldberg v. Cameron*, 482 F.Supp.2d 1136 (N.D. CA 2007) . . . . . . . . . . . . . . . . . . . . . 11

*Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129 (C.D.Cal. 2001) . . . . . . . . . . . . . . 10, 13

*Iowa State Univ. Research Found. v. American Broadcasting Co.*, 463 F.Supp.902 (S.D.N.Y.1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kodadek v. MTV Networks, Inc.* 152 F.3d 1209 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . 10

*Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Olson v. National Broadcasting Co.* 855 F.2d 1446 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . 5

*Polar Bear Productions, Inc. v. Timex Corporation*, 384 F.3d 700 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

*Roley v. New World Pictures*, 19 F.3d 479 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Tele-count Engineers, Inc. v. Pacific Telephone and Telegraph Co.*, 168 Cal.App.3d 455 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13


Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

*Thompson v. California Brewing Company*, 150 Cal.App.2d 469 (1957) . . . . . . . . . 11, 12

*Universal Pictures v. Harold Lloyd*, 162 F.2d 354 (9th Cir.1947) . . . . . . . . . . . . . . . . . 7, 8

*Worth v. Sechow & Righter,* 827 F.2d 569 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . 8

Statutes

17 U.S.C. § 507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California Bus. and Prof. Code § 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

## I. INTRODUCTION

Deborah Thomas ("Plaintiff" or "Thomas") properly states a claim for copyright infringement and unfair competition based on Defendants' use of her story submission "Squisher the Fish" to create the movie "Finding Nemo" and various derivative products based on that movie. Defendants' infringement is continuing and Thomas' claims address only those acts of infringement which occurred within the three years prior to the filing of her complaint. Thus, her complaint is not barred. Also, Defendants' argument that this Court should dismiss based on lack of similarity is without merit given the overwhelming similarities between "Squisher" and "Nemo." Finally, Thomas' unfair competition claim is not preempted because it is arises out of Defendants' breach of a confidential relationship and has been brought within the four year limitations period for unfair competition claims.

## II. FACTS

Thomas is not a sophisticated producer or member of the entertainment industry. She is a layperson who became familiar with fish as a result of being a diver and fish collector for many years. Thomas created an original literary work about a young fish called "Squisher the Fish." The story follows Squisher from the time he was a hatchling to his first day at a cleaning station. Squisher is inquisitive and explores the reef that he makes home. While he is out with friends, he is captured by a diver and taken to an aquarium tank.

Thomas submitted her unique and novel story to Defendants, for the purpose of developing a movie, book, or other commercial application. Thomas trusted Walt Disney Company and its subsidiaries to evaluate her work, and determine how best to use her story. Defendants accepted and reviewed Thomas' work for nearly three months before returning it, claiming it was their business practice to not accept outside story submissions. Despite this representation, Defendants used the story submitted by Thomas, and incorporated it into a movie entitled "Finding Nemo." At the heart of "Nemo" is Thomas' story about a young inquisitive fish, exploring his reef-home until he

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

is captured by a human diver and placed into an aquarium. Defendants have added to this story, but Thomas' Squisher story is integral to "Finding Nemo."

Defendants' use of Thomas' story infringes her copyright, and Defendants have continued to infringe her copyright by subsequent theatrical showings of the movie, DVD and videocassette sales, and the sale of other merchandise based on the movie. Thomas' complaint, filed on May 29, 2007, properly claims infringement for all acts within the previous three years.

## III. THOMAS' CLAIMS AGAINST DEFENDANTS' CONTINUING INFRINGEMENT WITHIN THE PREVIOUS THREE YEARS IS TIMELY

The statute of limitations for copyright infringement is three years. 17 U.S.C. § 507. In a case of continuing infringement, an action may be brought for all acts that occurred within the three years preceding the filing of the suit. *See Roley v. New World Pictures*, 19 F.3d 479, 481 (9th Cir. 1994). Thomas' complaint was filed on May 29, 2007. Thus, all acts of infringement by Defendants occurring after May 29, 2004 to the present are not barred. On information and belief Plaintiff contends that the movie continued to be shown to the public in theaters domestically and internationally after May 29, 2004. Each such theatrical showing constitutes a new act of infringement. Further, as alleged in Plaintiff's complaint, Defendants have reaped benefits since May 29, 2004 from sales of DVDs of the "Finding Nemo" movie as well as from sales of video games based on the movie. On information and belief, since May 29, 2004, Defendants have sold other merchandise based on the "Finding Nemo" movie, each such sale constituting a separate act of infringement.

### A. Continued showings of a movie in theaters and continued sales of DVDs are continuing wrongs and are not deemed a single act of infringement

Defendants incorrectly argue that subsequent showings of a movie or subsequent sales of DVDs after the initial release dates cannot be treated as separate acts of infringement. The cases cited by Defendants do not hold that all theatrical showings of a movie or all sales of DVDs are to be treated as one act of infringement occurring on the initial release date. In *Roley*, the Court held that a plaintiff cannot include claims outside

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

of the three year period in a case of continuing infringement, but permitted claims for acts of infringement occurring within the last three years preceding the filing of suit. Contrary to the argument of Defendants, the *Roley* court did not hold that the initial release date of a movie was the one and only date of accrual of the statute for copyright infringement. What the *Roley* Court did find was that the plaintiff in that case had failed to introduce any evidence of actionable conduct within the three year limitations period. *See Roley supra at 482*. That holding is inapposite to the case at bar because of the alleged acts of infringement within the limitations period. Similarly, *Kourtis v. Cameron*, 419 F.3d 989, 999-1000 (9th Cir. 2005) involved an infringement suit based on the *Terminator* movie. The Court held that although the initial act of infringement was outside the limitations period, the complaint alleged several acts of continuing infringement. Thus, the complaint was not barred in its entirety.

Disney's continued display, distribution and sale of Finding Nemo in theaters and on DVD is a continuing infringement, and Thomas' claim properly seeks damages only for those acts occurring within the three years prior to her complaint. *Kourtis*, 419 F.3d at 999-1000. Continued sales of an infringing product are treated as continuing acts of infringement and not as a single act. *See Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) (continued sale of maps that infringed plaintiff's copyright treated as a continuing wrong). The initial showing of the copied work is not a completed wrong but simply the first step in a course of wrongful conduct that continues until the last copy is sold. *Id.* at 1119. *See also Danjaq LLC v. Sony Corp.*, 263 F.3d 942 (9th Cir. 2001) (re-release of film by DVD many years after theatrical release treated as a separate infringement). Because plaintiff has alleged claims of infringement arising out of the continued theatrical showing of the movie, and continued sales of the DVD, she has stated a timely claim.

**B. Sales of video games, toys, live performances, books and merchandise within the limitations period are not barred**

Defendants suggest that Plaintiff waited too long to assert copyright claims arising out of the sale of video games, toys, books and other merchandise, as well as live

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

performances, but offer no evidence to establish that none of these works was created, distributed, sold or performed within the three year limitations period or that Plaintiff is otherwise untimely in asserting her claim. Defendants contend merely that a "reasonable person" would have asserted these claims earlier. Absent clear evidence of when these infringements occurred, however, Plaintiff's claims cannot be dismissed as untimely. For purposes of this motion, it must be presumed that Thomas' allegations of sales and performances within the limitations period are correct.

To the extent Defendants contend that it is inequitable for Plaintiff to have waited until May 2007 to file her infringement claims as to these products, her delay is not extraordinary enough to be barred by the doctrine of laches. In *Danjaq,* 263 F.3d 942, the Court found that Plaintiff's infringement claims as to DVD releases of James Bond films were barred by laches because Plaintiff had delayed asserting the claims some 16 and 19 years after the release of the movies! Here, Thomas asserted infringement claims within the limitations period as to these products and within four years of the original release date of the movie, not the egregious amount of time present in *Danjaq*. The cases cited by Defendants, *Polar Bear Productions, Inc. v. Timex Corporation,* 384 F.3d 700 (9th Cir. 2004) and *Bridgeport Music*, 2006 WL 3720348 at *9 (M.D. Tenn. 2006), stand simply for the proposition that a cause of action accrues when the plaintiff reasonably discovers the infringement. These cases do not support defendants' argument that plaintiff's delay of four years was unreasonable as a matter of law or that defendants have been prejudiced in any manner by the delay.

## IV. THOMAS' STORY AND FINDING NEMO ARE SUFFICIENTLY SIMILAR TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

Access by defendants to plaintiff's original story for nearly three months has been established. In evaluating defendants' motion to dismiss for failure to state a claim on the issue of similarity, the law requires that **copying be assumed** and that the motion be denied unless the two works lack any substantial similarity. *See Cory Van Rijn, Inc. v. California Raisin Advisory Board*, 697 F.Supp. 1136, 1138-1139 (1987) (emphasis added). Thus, the issue becomes whether there is anything original in Squisher that is

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

substantially similar to what is contained in Finding Nemo. If there is, Defendants' motion on substantial similarity fails. *See Cory Van Rijn* at 1139; *Funky Films, Inc. v. Time Warner*, 462 F.3d 1072, 1076 (9th Cir. 2006) (to oppose summary judgment, plaintiff need only show the existence of a triable issue of fact that Plaintiff's original material was copied by defendants).

The test for substantial similarity involves both an extrinsic test, which is objective, and an intrinsic test, which is subjective. *Berkic v. Crichton*, 761 F.2d 1289, 1292 (9th Cir. 1985). A plaintiff must establish evidence of both types of similarity, but a Court can only evaluate the extrinsic prong because the intrinsic test is exclusively the province of the jury. *Funky Films* at 1078. The extrinsic test focuses on articulable similarities between the plot, themes, dialogue, mood, setting, pace, characters and sequence of events in the two works. *Id.* Plaintiff need not show similarity as to each factor. *See e.g. Olson v. National Broadcasting Co.* 855 F.2d 1446, 1451 (9th Cir. 1988) (infringement may be found based on substantial similarity of some of the relevant factors) (citing *Bevan v. Columbia Broadcasting System, Inc.*, 329 F. Supp. 601 (S.D.N.Y. 1971).

Here, Finding Nemo borrows distinct and original expressions of ideas from Thomas' Squisher the Fish, precluding dismissal for failure to state a claim.

Plot, Setting and Sequence of Events:

The heart of "Finding Nemo" is the story of a young inquisitive fish that is captured by a diver and taken away from his coral reef home. This is a story lifted directly from "Squisher the Fish." Without this distinct and original story, there would be no Finding Nemo.

Both Nemo and Squisher begin by showing the principal characters as an egg being guarded by a parent. (*See* Decl. of Thomas, Exh. B, story submission). Upon being hatched, Squisher sets out to explore his neighborhood, the reef. He is amazed by the bright and colorful surroundings, and the varieties of fish inhabiting the reef. Finding Nemo similarly opens with Nemo being hatched and setting out to explore his home, the

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

reef, and expressing wonder at the bright and colorful surroundings and the varieties of fish inhabiting the reef. While Defendants attempt to downplay the similarity of both stories taking place on the edge of a reef by pointing to Nemo's "Australian" reef, the action in both stories takes place on the reef and that is the significant element.

Squisher progresses with the little fish excited to attend his first day at a cleaning station, a community place to learn and make friends. Squisher is guided by Glen who points out the various fish with a song naming each species. Nemo also experiences a "first day"--at school--during which he joins other fish in the community. Nemo is also taught by another fish, Ray, who shows him the reef and identifies the various fish with a species song.

Both Squisher and Nemo are captured by a diver. The depiction of the capture is identical in both stories. Both Squisher and Nemo are with three friends when they find themselves face to face with the looming mask of the diver. In both stories, the characters are standing at the edge of the reef when the diver appears out of nowhere. Both Squisher and Nemo are caught in a net as they try to escape. In Nemo, Marlin freezes with fear. Although fish are never "frozen," this distinctive detail is taken from Squisher where Dot is frozen with fear at facing the diver.

Both Squisher and Nemo then are taken to the surface by the diver and observe with wonder what the world is like. Nemo is placed in a clear bag on the boat and is able to observe the sky and the world above the sea. Similarly, Squisher observes the sky and world above the sea. In either story, the fish could have been placed in a container where he could not observe the surroundings above sea level. However, the two stories do not deviate from each other.

Squisher was captured for a little boy; Nemo was captured for a little girl. Squisher and Nemo are both taken to an aquarium tank, where both characters initially hide under a rock because they are scared. Eventually, both characters emerge from their rock in the aquarium and are happy to be in the tank. Defendants argue that Squisher does not describe what occurs to him after he is placed in the tank. However, Thomas

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

indicated to Defendants in her submittal that she was working on a follow-up story about Squisher's life in the tank. As alleged, Defendants chose to take Thomas' story and run with it. (*See* Decl. of Thomas, Exh. A).

There are other scenes in Squisher that are duplicated wholesale in Nemo. Squisher and Glen are chased by an eel who lunges at them with mouth open, but they manage to narrowly escape through a hole. This chase scene is duplicated in Nemo, when sharks chase Marlin and Dory, but the two narrowly escape being eaten as they swim through a hole. Also, Squisher and his friends play hide and seek before their capture. Identically, in Nemo, Dory plays hide and seek with the turtles.

The similarity of plot elements and setting are even more striking, given that the sequence of events in each story unfolds in the same manner. Both stories open with Squisher/ Nemo guarded by protective parents as eggs, and immediately transition to Squisher/ Nemo inquisitively exploring their home, the reef. Both Squisher / Nemo are subsequently captured by a diver. Although the Squisher story is shorter than the Nemo movie, the exact sequence of Squisher remains intact in Nemo. The comparative length of the original material copied and the infringing material is frequently irrelevant to the issue of substantial similarity. For example, in an oft-cited case, the similarity with respect to only one sequence of plaintiff's motion picture (representing only 20% of the entire film) was found sufficient to constitute substantial similarity. *Universal Pictures v. Harold Lloyd*, 162 F.2d 354 (9th Cir.1947). *See also Iowa State Univ. Research Found. v. American Broadcasting Co.* 463 F.Supp.902 (S.D.N.Y.1978)(defendant's broadcast of one 12 second segment and one 2 ½ minute segment from plaintiff's film amounted to sufficient similarity to support a judgment of infringement).

Squisher and Nemo follow each other in plot, setting and sequence lockstep until the end of Squisher the Fish. Moreover, while generic items such as an ocean setting, underwater creatures, and a diver may be unprotected "scenes a faire," it is Plaintiff's original plot and arrangement of these elements that have been precisely duplicated by Defendants. While Defendants have added to plaintiff's Squisher story (e.g., Nemo's

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

father attempting to rescue Nemo from the tank) the fact that defendants' movie is much longer and contains more elements than plaintiff's story is not dispositive of the similarity issue. *See Universal Pictures*, *supra.*, at 361. It is enough if the part copied by defendants represents a substantial portion of plaintiff's entire work. *Id.* The test is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work, not whether such material is a substantial portion of defendant's work. *Worth v. Sechow & Righter*, 827 F.2d 569, 570 n.1 (9th Cir.1987). Here, the entirety of the fundamental essence and structure of Squisher the Fish is duplicated in Finding Nemo. That the movie contains some material not found in Squisher does not negative the substantial similarity between the two. Nemo's story cannot begin or end without the Squisher story.

Characters:

Nemo, the principal character of defendants' movie is actually plaintiff's Squisher. Squisher is guarded by his parents until being hatched. Similarly, Nemo is introduced in the movie as an egg, hatched while being carefully guarded by his father.

Squisher is curious and inquisitive, so is Nemo. Just as Nemo must be cautioned on his first day of school to be wary of dangers, Squisher is cautioned before his first day at the cleaning station. Moreover, Squisher is described as "king of his world, in this public aquarium" at the end of Plaintiff's story. In copyrighting the artwork for Nemo, Defendants characterized Nemo as "King of the tank." (*See* Req. for Judicial Notice, Decl. of Thomas, Exh. F). Nemo as "King of the tank" is also on "Finding Nemo" merchandise and video games. (*Id.*, Exhs. G, H).

A distinctive characteristic of Nemo is his injured fin. This is taken directly from the character Mr. Grubbs in Squisher. Defendants like this characteristic so much they used it twice, having Gill, one of the aquarium fish in Nemo, suffer from the same injured fin.

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

Frankie, the hip loggerhead turtle in Squisher, becomes Crush, the hip loggerhead turtle in Nemo. In fact, Squisher first meets Frankie and Nemo first meets Crush when each is seeking directions.

There are other more minor characters duplicated in both stories. Finding Nemo bases the character Ray, the teacher, on Glen. Both teachers educate the main character Nemo/ Squisher on the various types of fish in the sea and show them around the reef. Nemo even has a character named "Squishy," an obvious derivative of "Squisher."

While Defendants contend that Squisher's characters are unprotectable because they lack detail, the characters are sufficiently distinctive to be readily identified in Nemo. Squisher's characters are distinguished by physical characteristics (such as a broken fin) by conduct and by attitude (the inquisitive Squisher and the hip Frankie).

<u>Dialogue</u>:

The characters in Nemo consistently express wonderment over the ocean and its inhabitants throughout the film. Squisher's dialogue also contains amazement of the ocean. For example, Squisher's first thought is "wow," which is also the first word spoken in the film by Marlin. In Nemo, Ray sings a song describing the various species living in the reef. This song is uncannily similar to the song Glen sings in Squisher. The only variance is that Nemo uses the formal names of species such as (porifera) whereas Squisher uses the more familiar (sponges).

Finally, the dialogue in each story reflects the theme of friendship. For example, Glen tells Squisher about love and how it makes one feel whole. Dory tells Marlin "when I look at you, I can feel it . . . and I'm home."

<u>Theme</u>:

Although Defendants contend that "Finding Nemo" is really about the father Marlin, there is no story without Nemo's adventure from when he was a hatchling to when he ended up in the aquarium tank. The theme of that adventure is wonderment for the ocean and undersea life, and personal growth. Similarly, Squisher deals with themes of curiosity and amazement and Squisher's personal growth. Squisher also deals with

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

themes of friendship. The main theme of Marlin and Dory's interaction is friendship. In fact, Squisher's relationship with Dot is strikingly similar to that of Marlin and Dory as the film develops.

Mood and Pace:

As with all of the comparisons, it is always difficult to compare "mood and pace" between works which are captured in different media (written word versus film). *See Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1185 (C.D.Cal. 2001). Nevertheless, the similarity here is significant. In an article on Disney's website, it is pointed out that the mood of the Nemo story was originally dark. (*See* Req. for Judicial Notice, Decl. of Thomas, Exh. D). However, the mood of Nemo ultimately duplicates that of Squisher. A happy, light children's tale. The mood of Squisher is one of wonderment for the ocean and its inhabitants, which is duplicated by Nemo. The Squisher story follows the birth and growth of Squisher until his capture by a diver. Nemo is paced to follow the birth and growth of Nemo until his capture.

The original and distinct elements in Squisher that are duplicated in Nemo, down to the manner in which the stories unfold, preclude dismissal for failure to state a claim.

**V. THOMAS' UNFAIR COMPETITION CLAIM IS NOT PREEMPTED**

Thomas' state law claim of unfair competition is based on the breach of a confidential relationship that arose out of the submission of her story to Defendants and is not preempted by copyright law. Thus, Thomas' unfair competition claim must be treated separately from her copyright infringement cause of action, and is governed by California Bus. and Prof. Code § 17200 and other California law.

State law claims are not preempted if they do not assert rights that are "equivalent" to those protected by the Copyright Act. *See Kodadek v. MTV Networks, Inc.* 152 F.3d 1209, 1212 (9th Cir. 1998). Thomas' unfair competition claim is not equivalent to her infringement claim because the former requires proof of an additional element not required as an element of infringement liability--i.e., breach of confidence. That extra

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

element makes the unfair competition claim qualitatively different from the infringement claim. *See Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1151 (N.D. CA 2007).

It is well established that a breach of confidence claim is not preempted by copyright law. *See e.g. Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327, 1350 -1351 (1990)(holding an unfair competition claim based on breach of confidence is not preempted by copyright law). Defendants do not dispute this principle. They argue only that taking Thomas' allegations as true, her claim of breach of confidence is legally incompetent as a matter of law. The law holds otherwise.

An actionable breach of confidence arises when an idea, whether or not protectable, is offered to another in confidence, and is received by the offeree in confidence, with the understanding that it will not be disclosed to others, and will not be used by the offeree for purposes beyond the limits of the confidence without the offeror's permission. *See Faris v. Enberg*, 97 Cal.App.3d 309, 323 (1979). Though a confidential relationship will not be created from the bare submission of an idea to another, evidence of a confidential relationship may be inferred from proof that the material submitted was protected by reasons of novelty or elaboration. *Id.* Also, proof that the plaintiff offered her idea upon condition of confidence and an understanding that payment would be made upon use, will suffice to establish a confidential relationship. *Id.* at 322.

Thomas alleges that the confidential nature of her submission was communicated to defendants. (*See* First Amended Complaint ¶ 21, "Defendants knew or should have known that Plaintiff's story submission was in confidence...") An explicit communication or particular method of notice that her submission was in confidence is not required by the case law. Communication of the confidentiality of a submission can be inferred by proof that the material submitted was protected by novelty or elaboration. *See Farris,* 97 Cal.App.3d at 323. Courts have analogized breach of confidence with trade secret misappropriation, and have held that no particular form of notice of confidentiality is required. *See Thompson v. California Brewing Company*, 150 Cal.App.2d 469, 474 (1957). The issue is whether objective circumstances demonstrate that the recipient knew

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

or a reasonable recipient would have known that the submitted information was a novel idea and constituted a disclosure made in confidence. *Id.*

Here, Thomas' story, "Squisher the Fish," was detailed and novel. She submitted her original work to Defendants in an envelope labeled "submission," with a cover letter communicating to Defendants that her story was original and novel. (*See* FAC ¶ 18-21; Decl. of Thomas, Exh. A). Even in the absence of an explicit request to maintain confidentiality, the novelty of "Squisher the Fish" and the circumstances of its submission support an inference that the submission was made in confidence. *See Thompson,* 150 Cal.App.2d at 474 (denying demurrer where plaintiff alleged submission of novel idea without any indication submission made in confidence).

Thomas also communicated an understanding that use of her story would result in payment and proposed working jointly with defendants. In addition to communication of novelty, submission on the condition of payment upon use has been held to support the finding of communication of a confidential idea. *See Farris supra* at 322. Thomas further alleges that Defendants took advantage of her by using her story without payment for its use. Courts will find a confidential relationship when the parties deal on unequal terms, requiring the weaker party to repose trust and confidence in the stronger party's good faith. *See Davies v. Krasna*, 245 Cal. App. 2d 535,548 (1996).

Defendants' argument that they did not understand the confidential nature of Thomas' submission fails for the same reasons. First, Thomas alleges that Defendants knew or should have known the confidential nature of her submission. (*See* FAC ¶¶ 18-21). Next, Thomas' submission of a novel story idea on the condition of payment upon use supports the inference that Defendants understood the confidential nature of the submission. *See e.g. Farris supra.*

Defendants' citation to *Davies* actually supports the inference that a confidential relationship was created. In *Davies,* while the court observed generally that in order for a confidential relationship to be found, either the recipient must have agreed to hold the idea in confidence or there must have been a pre-existing relationship (such as employer-

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

employee), the court ruled there are circumstances in which a plaintiff's idea will be protected even in the absence of such an agreement or relationship. *See Davies* at 548. "Such protection is akin to the traditional protection which equity will afford to a trade secret." *Id.*

The inferred understanding of the confidential nature of Thomas' submission preceded Defendants' use and disclosure of her story. *Tele-count Engineers, Inc. v. Pacific Telephone and Telegraph Co.*, 168 Cal.App.3d 455, 463 (1995). Accordingly, defendants cannot be heard to argue they had "no opportunity to reject" Thomas' submission. The crux of Thomas' allegations is that Defendants claimed to reject the submission while at the same time they were using it without payment. Defendants held onto plaintiff's story for nearly three months, instead of rejecting it immediately as their purported protocol of "never accepting unsolicited submissions," would have required. Such evidence further supports the inference that defendants accepted plaintiff's confidential submission.

Defendants' reliance on *Anderson v. Stallone*, 1989 WL 206431 (C.D. Cal.1989) is not apposite. In *Anderson*, the Court acknowledged that breach of confidence claims are not preempted by copyright law, but ruled Plaintiff had not brought a competent breach of confidence claim. The plaintiff had not submitted a story idea that was novel or unique. His story was based on the unauthorized use of Defendant's copyrighted "Rocky Balboa" characters. *Id.*

In *Idema v. Dreamworks, Inc.* 162 F.Supp.2d 1129, 1185 (C.D.Cal.,2001) the Court found no merit to plaintiff's claim of confidential relationship based on the allegation that he had marked "confidential" on the envelope containing his submittal. The court concluded that use of the word "confidential," without more, did nothing to change the qualitative nature of the claim and was not sufficient, therefore, to transform plaintiff's infringement claim into a breach of confidence claim. Here, Thomas has alleged entrustment of her novel story to Defendants' expertise with an expressed understanding that her idea had great commercial potential. It is the entrustment of a

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

novel idea, combined with permission to use upon payment, that establishes an inference of confidentiality. Thomas does not rely merely on the markings on the outside of the envelope. As held in *Idema,* breach of this confidential relationship is qualitatively different than infringement of a copyright. *Id.*

Similarly, *Design Art v. National Football League Properties*, Inc., 2000 WL 33151646, did not address whether Plaintiffs had established a confidential relationship. Addressing Plaintiff's allegation that Defendants had breached an "implied obligation" not to convert Plaintiff's ideas, the Court found that breach of an implied promise not to use is no different than an infringement claim. On the other hand, the Plaintiff at bar alleges more than simply breach of an implied obligation not to copy. She alleges breach of a confidential relationship by defendants' use of her novel work knowing they do not have permission to do so without payment, while at the same time claiming to reject it. These facts are lights years away from those in *Design Art.*

**VI. THOMAS' UNFAIR COMPETITION CLAIM HAS BEEN TIMELY BROUGHT WITHIN THE FOUR-YEAR LIMITATIONS PERIOD**

A cause of action for unfair competition must be brought within four years of accrual pursuant to Business and Professions Code § 17208. Thomas became aware that Defendants had engaged in their unlawful, unfair and fraudulent business practices when she saw the movie, "Finding Nemo" on June 6, 2003, and learned that Defendants had incorporated her story "Squisher the Fish," into the movie. (*See* FAC ¶ 27). Thomas' allegations here must be accepted as true and cannot be resolved by controverted facts. Thus, Thomas' Complaint, filed on May 29, 2007, is within the four-year limitations period of Business and Professions Code § 17208. Even if Thomas were charged with constructive notice of Defendants' unlawful business practices as of the date of the theatrical release of the movie on May 29, 2003, she is still within the four year limitations period.

Defendants' argument that Plaintiff "should have known" of their misconduct earlier than the initial release date is frivolous, without foundation and a matter of factual

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

dispute at best. Such factual questions cannot be resolved in this motion to dismiss. *See Firoozye v. Earthlink Network*, 153 F.Supp.2d 1115, 1119 (N.D. CA 2001)("The Court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party."); *see also Polar Bear*, 384 F.3d at 707 (date of discovery of a cause of action is a question of fact.)

Moreover, the mere existence of publications surrounding the future release of a movie entitled "Finding Nemo" is incompetent to charge Thomas with constructive knowledge that Defendants had copied her Squisher story to make the movie. To charge Plaintiff with knowledge of news releases concerning the future release of a movie, it must first be shown: (1) that Plaintiff read the publications in which the press releases appeared or is likely to have read them. and (2) that the press releases contained sufficient detail of story line, description of characters and dialogue to cause Plaintiff or a reasonable person to realize that the movie incorporated Plaintiff's work. None of these foundational facts has been established, nor can they be. *See Polar Bear Productions*, 384 F.3d at 706.

Before the movie's release and Plaintiff's viewing thereof, it is unreasonable to charge Thomas with the duty of scouring trade papers or conducting searches on Westlaw (as counsel has done in support of Defendants' motion to dismiss) to see if anyone has stolen her story, especially in view of Defendants' misrepresentation that they had rejected her story. It is also unreasonable to expect Thomas to discover that she had an actionable wrong from news articles that mention a future movie bearing a different title than her story and that do not describe the movie in sufficient detail to alert her or a reasonable person that the movie incorporated her story. In fact, most of the articles cited by Defendants do no more than briefly mention the future release of the movie with scant or no discussion of plot. (*See* Decl. of A. Roberts, Exh. A, B, C, D.)

It is also unreasonable to assume that Thomas should have discovered she had an actionable wrong from the movie's Hollywood pre-release to a few celebrities. (*See* Decl.

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120

of A. Roberts, Exh. E, F, G). Thomas is a member of the general public and did not attend the Hollywood premiere.

None of the disputed facts Defendants seek to introduce establish that Plaintiff is untimely in her unfair competition claim.

## VII. CONCLUSION

Defendants' motion to dismiss must be denied because plaintiff properly states a cause of action for copyright infringement and unfair competition. Defendants' infringement of Thomas' copyright has been continuous and on-going and she can recover for all continuing wrongs within the three years prior to suit. Thomas' story is original and unique and there are overwhelming similarities between her story and Defendants' film. Finally, Thomas' unfair competition claim is timely and cannot be preempted because it is based on a breach of confidence that is qualitatively different than a copyright infringement claim.

Dated: January 10, 2008

ROBINSON & WOOD, INC.

By /s/
ARCHIE S. ROBINSON
Attorneys for Plaintiff
DEBORAH J. THOMAS

Robinson & Wood, Inc.
227 North First Street
San Jose, CA 95113
(408) 298-7120