1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Claude M. Stern (Bar No. 96737)
2    claudestern@quinnemanuel.com
     Evette D. Pennypacker (Bar No. 203515)
3    evettepennypacker@quinnemanuel.com
     Andrea Pallios Roberts (Bar No. 228128)
4    andreaproberts@quinnemanuel.com
   555 Twin Dolphin Drive, Suite 560
5  Redwood Shores, California  94065-2139
   Telephone:    (650) 801-5000
6  Facsimile:    (650) 801-5100

7  Attorneys for Defendants The Walt Disney
   Company, Walt Disney Pictures, Disney Book
8  Group, LLC, Pixar, and Disney Enterprises, Inc.

9

                   UNITED STATES DISTRICT COURT
10
                   NORTHERN DISTRICT OF CALIFORNIA
11
                         OAKLAND DIVISION
12

13  Deborah J. Thomas,                       CASE NO. 4:07-cv-4392

14            Plaintiff,                      **REPLY IN SUPPORT OF MOTION TO
                                             DISMISS PLAINTIFF'S FIRST
15      vs.                                   AMENDED COMPLAINT**

16  The Walt Disney Company, Walt Disney     Date:      January 31, 2008
    Studios, Disney Press, Pixar Animation   Time:      2:00 p.m.
17  Studios, Walt Disney Feature Animation, Walt Place:     Courtroom 2
    Disney Pictures, Disney Enterprises, Inc., and Judge:     Hon. Claudia Wilkin
18  DOES 1 through 100, Inclusive,

            Defendants.
19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2
<u>Page</u>

3

INTRODUCTION.................................................................................................1

4

ARGUMENT .....................................................................................................1

5

I.      PLAINTIFF FAILS TO STATE A COPYRIGHT INFRINGEMENT CLAIM. ..................1

6
        A.      Plaintiff's Declaration Dictates Dismissal of Her Copyright Claim. .......................1

7
        B.      "Squisher" and "Nemo" are Not Substantially Similar. ............................................2

8

II.     PLAINTIFF'S SECTION 17200 CLAIM IS PREEMPTED.............................................10

9

III.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS ........13

10
        A.      Plaintiff's Copyright Infringement Claim is Time-Barred. ....................................13

11
        B.      Plaintiff's Section 17200 Claim is Time-Barred....................................................15

12

CONCLUSION ................................................................................................15

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

5

*Aliotti v. R. Dakin & Co.*,
   831 F.2d 898 (9th Cir. 1987)..................................................................... 11, 12

6

*Anderson v. Paramount Pictures, Corp.*,
   617 F. Supp. 1 (D.C. Cal. 1985).................................................................... 9

7

*Anderson v. Stallone*,
   1989 WL 206431 (C.D. Cal. 1989) ....................................................... 3, 9, 12

8

*Balboa Ins. Co. v. Trans Global Equities*,
   218 Cal. App. 3d 1327 (1990) .............................................................. 11, 12

9

10

*Berkic v. Crichton*,
   761 F.2d 1289 (9th Cir. 1985)........................................................................ 5

11

*Bridgeport Music, Inc. v. Robert Hill Music*,
   2006 WL 3720348 (M.D. Tenn. 2006) .......................................................... 14

12

13

*Cavalier v. Random House, Inc.*,
   297 F.3d 815 (9th Cir. 2001)......................................................... 3, 4, 5, 8, 9

14

*Chirco v. Crosswind Communities, Inc.*,
   474 F.3d 227 (6th Cir. 2007).......................................................................... 14

15

16

*Danjaq LLC v. Sony Corp.*,
   263 F.3d 942 (9th Cir. 2001) .................................................................. 14, 15

17

*Davies v. Krasna*,
   245 Cal. App. 2d 535 (1966)................................................................ 10, 11, 12

18

19

*Design Art v. Nat'l Football League Prop.*,
   2000 WL 33151646 (C.D. Cal. 2000) ..................................................... 12, 13

20

*Dielsi v. Falk*,
   916 F. Supp. 985 (C.D. Cal. 1996)................................................................ 1

21

22

*Ets-Hokin v. Skky Spirits, Inc.*,
   225 F.3d 1068 (9th Cir. 2000)....................................................................... 6

23

*Faris v. Enberg*,
   97 Cal. App. 3d 309 (1979) ......................................................................... 10

24

25

*Funky Films, Inc. v. Time Warner Entm't Co.*,
   462 F.3d 1072 (9th Cir. 2006).............................................................. 1, 3, 5, 8, 9

26

*Goldberg v. Cameron*,
   482 F. Supp. 2d 1136 (N.D. Cal. 2007).......................................................... 10

27

28

-ii-

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1  *Idema v. Dreamworks,*
       162 F. Supp. 2d 1129 (C.D. Cal. 2001) ................................................................. 12, 13
2
   *Iowa State Univ. Research Found. v. Am. Broad. Co.,*
3      463 F. Supp. 902 (S.D.N.Y. 1978) ................................................................................ 3

4  *Kodadek v. MTV Networks, Inc.,*
       152 F.3d 1209 (9th Cir. 1998) ..................................................................................... 10
5
   *Kouf v. Walt Disney Pictures & Television,*
6      16 F.3d 1042 (9th Cir. 1994) ......................................................................................... 3

7  *Kourtis v. Cameron,*
       419 F.3d 989 (9th Cir. 2005) ................................................................................. 13, 14
8
   *Litchfield v. Spielberg,*
9      736 F.2d 1352 (9th Cir. 1984) ....................................................................................... 3

10 *Mass. Mut. Life Ins. Co. v. Sup. Ct.,*
       119 Cal. App. 4th 1282 (2002) ..................................................................................... 15
11
   *Olson v. National Broadcasting Co., Inc.,*
12     855 F.2d 1446 (9th Cir. 1988) ....................................................................................... 5

13 *Oyster Software, Inc. v. Forms Processing, Inc.,*
       2001 WL 1736328 (N.D. Cal. 2001) ............................................................................. 1
14
   *Patriot Scientific Corp. v. Korodi,*
15     2007 WL 1558510 (S.D. Cal. 2007) ............................................................................ 12

16 *Planesi v. Peters,*
       2005 WL 1939885 (9th Cir. 2005) ................................................................................ 6
17
   *Polar Bear Prod., Inc. v. Timex Corp.,*
18     384 F.3d 700 (9th Cir. 2004) ......................................................................... 13, 14, 15

19 *Rice v. Fox Broad. Co.,*
       330 F.3d 1170 (9th Cir. 2003) .............................................................................. 3, 5, 6
20
   *Roley v. New World Pictures, Ltd.,*
21     19 F.3d 479 (9th Cir. 1994) ................................................................................... 13, 14

22 *Saunders v. Knight,*
       2006 WL 224426 (E.D. Cal. 2006) ............................................................................. 10
23
   *Strawflower Elec., Inc. v. Radioshack Corp.,*
24     2005 WL 2290314 (N.D. Cal. 2005) ........................................................................... 12

25 *Taylor v. Meirick,*
       712 F.2d 1112 (7th Cir. 1983) ..................................................................................... 14
26
   *Tele-Count Engineers, Inc. v. Pacific Telephone and Telegraph Co.,*
27     168 Cal. App. 3d 455 (1985) ................................................................................. 11, 12

28

-iii-

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1    *Temple v. Adams,*
          2006 WL 2454275 (E.D. Cal. 2006) ................................................................. 10
2
     *Thompson v. California Brewing Co.,*
3          150 Cal. App. 2d 469 (1957) ................................................................... 11, 12

4    *Universal Pictures v. Harold Lloyd,*
          162 F.2d 354 (9th Cir. 1947) ........................................................................ 3
5
     *Williams v. Crichton,*
6          84 F.3d 581 (9th Cir. 1996) ......................................................................... 5

7    *Worth v. Sechow & Righter,*
          827 F.2d 569 (9th Cir. 1987) ....................................................................... 3
8

9                                        **<u>Statutes</u>**

10   17 U.S.C. § 411(a) ............................................................................................. 1

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                         -iv-

**Introduction**

1
2   Plaintiff's Opposition is riddled with inaccuracies and filled with admissions that are
3 completely fatal to her copyright and unfair competition claims.  Plaintiff admits Defendants did
4 not have access to her copyrighted work, and that she never informed Defendants of the alleged
5 confidential nature or novelty of her work or her expectation of payment.  Plaintiff also concedes
6 that Defendants made no fraudulent misrepresentations.  And she admits she knew of the alleged
7 infringement nearly four years before she finally filed a claim.  Nevertheless, Plaintiff argues that
8 her claims should be kept alive because her short textual work "Squisher the Fish" ("Squisher") is
9 substantially similar to the motion picture "Finding Nemo" ("Nemo").  Plaintiff disingenuously
10 attempts to support this argument by adding facts to her "Squisher" story that are not there, by
11 taking story events completely out of sequence and context, and by improperly combining and
12 manipulating features of different characters in the two works.  To the contrary, the only
13 similarities between "Squisher" and "Nemo" are unprotectable ideas and *scenes a faire*, and her
14 claims should be dismissed with prejudice.

**Argument**

15
16 I.  **PLAINTIFF FAILS TO STATE A COPYRIGHT INFRINGEMENT CLAIM.**

17   A.  **Plaintiff's Declaration Dictates Dismissal of Her Copyright Claim.**

18   According to Plaintiff's declaration, there are at least two versions of "Squisher": one
19 submitted to the Copyright Office and one submitted to Defendants.  (Thomas Dec., ¶ 2, Ex. B.)
20 This admission is fatal.  Plaintiff cannot state a copyright claim based on the unregistered version
21 of the work she sent to Defendants.  *Funky Films, Inc. v. Time Warner Entm't Co.*, 462 F.3d 1072,
22 1076 (9th Cir. 2006).  Further, she cannot state a claim based on the registered version of her work
23 because, by her own admission, Defendants did not have access to it.  *Id.*[1]

24
25

---

26  [1] The Court also lacks subject matter jurisdiction over the claim, leaving Plaintiff with her
27 preempted § 17200 claim.  17 U.S.C. § 411(a); *Oyster Software, Inc. v. Forms Processing, Inc.*,
2001 WL 1736328, *10-11 (N.D. Cal. 2001); *Dielsi v. Falk*, 916 F.Supp. 985 (C.D. Cal. 1996).
28

**B.    "Squisher" and "Nemo" are Not Substantially Similar.**

"Squisher" and " Nemo" are completely different, and Plaintiff's attempts to show substantial similarity fail.  Plaintiff's brief is full of inaccuracies:

| __Plaintiff's Argument__ | __Actual Facts__ |
|---|---|
| Both works begin by showing "the principal characters as an egg being guarded by a parent." (Opp. 5) | Squisher does not have parents in the copyrighted version.  (Ex. T.)[2] |
| "Nemo" opens "with Nemo being hatched and setting out to explore his home" and "expressing wonder" at his surroundings.  (Opp. 5-6) | "Nemo" opens with Marlin and his wife in a new home, excited that they are about to become parents.  Nemo is never shown being hatched, and he does not explore his surroundings in wonder.  He is simply excited about his first day of school.  (Ex. U.) |
| Squisher is "excited to attend his first day at a cleaning station, a community place to learn and make friends."  Nemo is also excited about his first day of school.  (Opp. 6) | The reef cleaning station is not a "community place to learn" or a school; it is a job.  Glen describes it to Squisher as "a place where you can work and be safe, there's plenty to eat and many friends you can make. . . . all you do is clean the fish along your shelf."  (Ex. T.) |
| The depictions of Squisher's and Nemo's captures are "identical in both stories." (Opp. 6) | Squisher is eating dinner with his friends when a diver appears and captures him *and* Dot.  (Ex. T.)  In contrast, Marlin is making a scene in front of Nemo's class, and, in defiance, Nemo swims out into the "drop off" and touches the bottom of a boat in front of his father, teacher, and entire class.  When on his way back to the reef, a diver appears and captures him.  (Ex. U.) |
| Marlin "freezes with fear" when Nemo is captured, just like "Dot is frozen with fear at facing the diver." (Opp. 6) | Marlin is not frozen with fear.  After Nemo's capture, a diver takes a picture of Marlin.  He is temporarily blinded by the flash, but regains sight and follows the boat.  (Ex. U.) |
| "Nemo is placed in a clear bag on the boat and is able to observe the sky and the world above the sea. . . . In either story, the fish could have been placed in a container where he could not observe the surroundings above sea level.  However, the two stories do not deviate from each other." (Opp. 6) | Nemo is placed in a plastic bag and then in a closed (i.e., covered) cooler on the boat.  Nemo is not able to observe his surroundings.  Nemo's reactions while he is on the boat are not shown.  (Ex. U.) |
| "Both characters emerge from their rock in the aquarium and are happy to be in the tank." | Nemo makes friends in the tank, but is not happy.  He is homesick and wants to go home to |

---

[2]    Unless otherwise noted, all exhibits are attached to the Roberts Declaration.

| | |
|---|---|
| (Opp. 6) | his father.  With the help of the tank gang, Nemo tries to escape multiple times.  (Ex. U.) |
| The scene in which Squisher and Glen are chased by an eel and escape through a hole is "duplicated" when Marlin and Dory swim through a hole to escape sharks.  (Opp. 7) | Marlin and Dory hide from sharks in a hole in an abandoned ship, but are not safe until they push a torpedo out of the hole, and the torpedo sets off explosives on the ocean floor.  (Ex. U.) |

Even where Plaintiff has pointed to some actual similarities, they are merely unprotected ideas or *scenes a faire*.  *Funky Films*, 462 F.3d at 1077 (*scenes a faire* not entitled to protection); *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1174 (9th Cir. 2003) (ideas not entitled to protection, only the expression of ideas).  In any event, "random similarities scattered throughout the works" do not establish infringement.  *Cavalier v. Random House, Inc.*, 297 F.3d 815, 825 (9th Cir. 2001).

**Sequence of Events.**  Plaintiff contends the sequence of events in "Nemo" follows the events in "Squisher" "lockstep."  (Opp. 7)  This is false.  Nemo is captured by a diver early in the film.  (Ex. U.)  The story then follows his father Marlin's attempts to find Nemo and Nemo's attempts to escape from a dentist's fish tank.  In contrast, Squisher is not captured by a diver until the end of the work and he does not try to escape.  (Ex. T.)  Moreover, no one tries to rescue Squisher.  (*Id.*)  Plaintiff does not dispute these differences (Opp. 7-8), nor does she distinguish Defendants' cases in which courts found comparably different plot sequences warranted a "no substantial similarity" finding.  *See Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042 (9th Cir. 1994) (sequence in stories about shrinking children different because the characters shrunk to different sizes, by different means, for different reasons, with different frequency, and for different outcomes); *Litchfield v. Spielberg*, 736 F.2d 1352 (9th Cir. 1984) (sequence of events between "ET" and another extra-terrestrial story were different because the latter landed in the North Pole and stayed with a family there, then traveled to different places around the world before returning to the ship); *Anderson v. Stallone*, 1989 WL 206431 (C.D. Cal. 1989) (sequence in Rocky stories different because only similarity was an ending with Rocky fighting a communist fighter).

To try and save her claim, Plaintiff argues that while Defendants added to her story, they copied a substantial portion of her work.  (Opp. 7-8)  Citing *Universal Pictures v. Harold Lloyd*, 162 F.2d 354 (9th Cir. 1947), *Iowa State Univ. Research Found. v. Am. Broad. Co.*, 463 F.Supp.

902 (S.D.N.Y. 1978), and *Worth v. Sechow & Righter*, 827 F.2d 569 (9th Cir. 1987), she contends the two works are substantially similar despite the fact that "Nemo" contains material not in "Squisher" because "the entirety and fundamental essence and structure" of "Squisher" is duplicated in "Nemo." (*Id.*)  Here, even if the Court looks only at the events leading up to the capture by a diver, the sequences of events are extremely different.  (Compare Exs. T and U.)

| Events in "Finding Nemo" | Events in "Squisher the Fish" |
|---|---|
| Nemo's mother is killed by a barracuda and Marlin promises Nemo, while he is still an egg, that he will "never let anything happen to him" | Squisher hatches from an egg |
| Nemo is excited about his first day of school | Squisher finds a home |
| Nemo goes on a field trip with his class | Squisher meets Glen |
| Nemo and three friends sneak away from the class to get closer to the "drop off" and see a boat | Squisher goes to work at a reef cleaning station |
| Nemo's friends challenge him to swim out into the "drop off" | Squisher meets Dot and falls in love |
| Marlin catches Nemo before he can swim into the "drop off" and scolds him and his teacher | Squisher plays with his friends Glen, Emily, and Dot |
| Embarrassed that his father is making a scene in class, Nemo swims out into the "drop off" and touches the bottom of the boat while his father scolds him | Squisher is captured by a diver |
| A diver appears and captures Nemo | Squisher is put in a fish tank |
| Nemo is put in a fish tank, is homesick and repeatedly tries to escape | Squisher is content in the fish tank |

Plainly, the only overlap between these sequences of events is that the characters started as eggs, were eventually caught by a diver, and were put in a fish tank.  (*Id.*)  Such general plot ideas are not protectable.  *Cavalier*, 297 F.3d at 824.  The *Cavalier* court found the story of "a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep" was not protected.  *Id.*  Similarly, the story of a fish that started as an egg and was eventually caught by a diver and put in a fish tank is not entitled to protection.

**Plot.**  Plaintiff contends the "heart" of "Nemo" is "the story of a young inquisitive fish that is captured by a diver and taken away from his coral reef home."  (Opp. 5)  A basic plot idea is not

1  protectable. *Cavalier*, 297 F.3d at 824. Plaintiff fails to distinguish *Cavalier* and instead

2  desperately attempts to argue that her idea of a sequel about Squisher's life in a fish tank is

3  protectable. (Opp. 6-7) It is not. Ideas are not copyrightable, the *expression* of ideas are. *Rice*,

4  330 F.3d at 1174. The *expression* of the idea of a "a young inquisitive fish that is captured by a

5  diver and taken away from his coral reef home" is completely different in "Squisher" and "Nemo."

6      **Setting.** Defendants do not dispute the two works have a few similar settings: the ocean, a

7  reef, and a fish tank. These, however, are nothing more than unprotected *scenes a faire*. In

8  *Cavalier*, the court found a night sky setting "naturally and necessarily flows from the basic plot

9  premise of a child's journey through the night sky." 297 F.3d at 824. In *Williams v. Crichton*, 84

10  F.3d 581 (9th Cir. 1996), the Ninth Circuit held "common elements of electrified fences,

11  automated tours, dinosaur nurseries, and uniformed workers were scenes-a-faire that flowed from

12  the concept of a dinosaur zoo." 84 F.3d at 589. Similarly, the ocean, reef, and fish tank in

13  "Nemo" and "Squisher" are indispensable to a story about a fish in the ocean, captured by a diver,

14  and put in a fish tank. *Funky Films*, 462 F.3d at 1077; *Cavalier*, 297 F.3d at 824; *Williams*, 84

15  F.3d at 589. Plaintiff fails to distinguish these controlling authorities, and her claim fails.

16      **Characters.** Plaintiff argues "Nemo, the principal character of defendants' movie is

17  actually plaintiff's Squisher." (Opp. 8) This borders on the absurd. First, Plaintiff cannot

18  establish her characters are sufficiently developed to be protected. *Olson v. National Broadcasting*

19  *Co., Inc.*, 855 F.2d 1446, 1451-52 (9th Cir. 1988). They are merely vague outlines of talking sea

20  creatures. Plaintiff claims "Squisher's characters are distinguished by physical characteristics

21  (such as a broken fin) by conduct and by attitude (the inquisitive Squisher and the hip Frankie)."

22  (Opp. 9) Such descriptions do not support any protection. *Olson*, 855 F.2d at 1451-52.[3]

23      Nemo and Squisher are completely different characters. Their only similarity is that they

24  begin the stories as young fish. Plaintiff could only show similarities by improperly combining

25  elements from different characters. *See e.g., Funky Films*, 462 F.3d at 1078-79 (comparing entire

26  _____

27     [3] Plaintiff does not dispute that "Squisher" does not have any characters like "Nemo's"
Marlin, Dory, Bruce, Chum, Anchor, and Nigel. (Opp. 8-9)

28

characters, not characteristics of various characters); *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985) (same).  A comparison of Squisher and Nemo reveals their differences:

| **Nemo** | **Squisher** |
|---|---|
| A young, school-age fish through the entirety of the film | Begins the story as a newly hatched fish, but grows up during the course of the story |
| A clownfish | A Rock Beauty Angelfish |
| Orange with three white stripes around his body and wide eyes | Yellow and has a blue dot somewhere on his body which decreases in size as he ages |
| The son of Marlin and the late-Coral | Has no parents in the story[4] |
| Has a deformed fin from a barracuda attack while he was an egg | Has no deformities |
| Yearning for independence from his overprotective father | Curious about his surroundings[5] |

Plaintiff next argues Defendants stole the idea of a fish with an injured fin by comparing Nemo and Gill to her Mr. Grubbs.  (Opp. 8)  The only similarity between them is an injured fin (compare Exs. T and U); the injuries are dissimilar and did not occur in the same way.  (*Id.*)  Moreover, the idea of a fish with an injured fin is unprotectable and its expression in these works is different:

| **Nemo** | **"Nemo's" Gill** | **"Squisher's" Mr. Grubbs** |
|---|---|---|
| A young, school-age fish | An older moorish idol fish | Young |
| Clownfish | Used to live in the ocean, but now lives in the fish tank in the dentist's office | A Grouper |
| Orange with three white stripes around his body and wide eyes | Recognized leader of the tank gang | Chubby |

---

[4]   Even if the Court considers the unregistered version of "Squisher," in which Squisher's parents watch over him as an egg, this similar idea is not protectable.  *Rice*, 330 F.3d at 1174.

[5]   Plaintiff argues that Squisher is described as "king of his world" and Nemo is described as "king of the tank."  (Opp. 8)  She cannot claim copyright protection in this phrase.  *Ets-Hokin v. Skky Spirits, Inc.*, 225 F.3d 1068, 1081 (9th Cir. 2000) (no copyright protection in short phrases); *Planesi v. Peters*, 2005 WL 1939885 (9th Cir. 2005) ("words and short phrases are not subject to copyright").  In any event, the phrase is generic and used in many contexts, including "king of the jungle" or "king of the forest."  *See e.g.*, the Cowardly Lion's song "King of the Forest" in *The Wizard of Oz* and Jack Dawson's proclamation "I'm the king of the world" in *Titanic*.

| | | |
|---|---|---|
| The son of Marlin and the late-Coral; yearning for independence from his overprotective father | Develops escape plans so he can return to the ocean | Works at a reef cleaning station |
| Has a deformed fin from a barracuda attack while he was an egg | Has a deformed fin, but does not explain how it happened | A spear pierced his fin the day before he met Squisher |

Plaintiff also attempts to liken Crush in "Nemo" to Frankie in "Squisher." (Opp. 9) The only similarity between them is they are turtles. (Compare Exs. T and U.) Plaintiff claims both are "hip" turtles, but she does not explain why Frankie is hip, and there is no information in the story to suggest this. (Opp. 9; Ex. T.) A comparison reveals these characters' differences:[6]

| "Nemo's" Crush | "Squisher's" Frankie |
|---|---|
| Sea turtle | Loggerhead turtle |
| Speaks in a "surfer dude" dialect, frequently using terms like "dude," "sweet," and "totally." | Has one line in which he rhymes "Frankie is my name and catching lobster is my game." |
| 150 years old | Age unknown |
| Father of Squirt | No family connections mentioned |

Plaintiff also argues Mr. Ray and her Glen are similar because they teach about the ocean. (Opp. 9) Even if they do both teach, that is where the similarities end. (Compare Exs. T and U.) Moreover, this is merely a similar idea, not a similar expression of the idea. The student-teacher relationship between Nemo and Mr. Ray, and the friendly relationship between Squisher and Glen are fundamentally different, as are the characters themselves.

| "Nemo's" Mr. Ray | "Squisher's" Glen |
|---|---|
| A ray | A Redlip Blenny |
| Nemo's teacher | Friend/mentor of Squisher |
| Teaches Nemo's class about the ocean, has very little direct interaction with Nemo | Gives Squisher advice about the ocean, reef, divers, and other fish, and introduces Squisher to some friends |

---

[6] Contrary to Plaintiff's arguments (Opp. 9), Squisher and Nemo do not meet Frankie and Crush in the same way. (Compare Exs. T and U.) Squisher meets Frankie when Frankie asks Squisher and his friends if they saw any lobsters. (Ex. T.) Marlin (not Nemo) meets Crush when he awakens on Crush's shell after being stung by jellyfish. (Ex. U.)

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

| | takes Squisher to work at a reef cleaning station[7] |
|---|---|

**Theme.**  Plaintiff incorrectly contends that "Nemo's" story is the adventure from when Nemo was an egg to when he was in a fish tank and that the theme is wonderment for the ocean and personal growth.  (Opp. 9)  Very little of the film is the "adventure" Plaintiff describes.  (Ex. T).  The story is about Marlin's attempt to find Nemo and Nemo's attempt to escape the fish tank.  (*Id.*)  Nemo does not express wonder for the ocean; instead, he swims into the "drop off" to rebel from his father, not to explore.  (*Id.*)  Further, the personal growth in "Nemo" was Marlin's.  (*Id.*)  Marlin learned to relax and let his son Nemo go.  (*Id.*)  Any personal growth in "Squisher" – which Plaintiff does not identify – is not similar to Marlin's.  (Compare Exs. T and U.)

**Mood and Pace.**  The pace of these works is completely different.  Plaintiff's 11-page story has Squisher growing up and falling in love, while Defendants' feature length "Nemo" takes place over just a few days and Nemo remains a boy.  (Opp. 10)  Plaintiff asserts the works are similarly paced to follow the birth of the young fish until his capture by a diver.  (Opp. 10)  This is false.  "Nemo" does not end with Nemo's capture; that is only the beginning.  (Ex. U.)  Such differences support a finding that the works are not remotely, let alone substantially, similar.  *See Funky Films*, 462 F.3d at 1080 (different pace where one work moved at a rapid clip and the other evolved slowly and in a repetitive fashion); *Cavalier*, 297 F.3d at 824 (different pace where one work completed an entire night's journey in five pages and the other progressed more deliberately, which contemplative scenes developing thematic details).

Plaintiff claims that early drafts of "Nemo" were dark and Defendants copied her work and changed the mood to happy and light.  (Opp. 10)  This is unsupported.  Plaintiff's work does not have a mood.  (Ex. T.)  Moreover, "Nemo's" mood is exciting and suspenseful.  (Ex. U.)  These differences reveal *dis*similarity.  *Funky Films*, 462 F.3d at 1080 (one work was a farcical mystery

---

[7]  Plaintiff also claims that "Nemo" has a character named "Squishy."  (Opp. 9)  This is a gross exaggeration.  In the film, Dory sees a baby jellyfish and calls it "Squishy."  (Ex. U.)  The baby jellyfish is not a character, is on screen for only a few seconds, does not speak, and does not have any characteristics other than being a baby jellyfish.  (*Id.*)  It is not similar to Squisher -- it is not even a character.  (Compare Exs. T and U.)

REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1  and the other serious, dramatic, and introspective); *Cavalier*, 297 F.3d at 824 (different moods in

2  children's stories where one was fun and lighthearted and the other serious and instructional).

3      **Dialogue.**  Plaintiff's claim that the dialogue in the two works is similar also is false.

4  (Opp. 9)  When examining dialogue, the Court may consider the amount and style of dialogue, and

5  the actual words spoken.  *Funky Films*, 462 F.3d at 1080 (distinguishing dialogue based on

6  complexity); *Cavalier*, 297 F.3d at 824 (distinguishing dialogue based on one work's near lack of

7  dialogue and the other's use of dialogue to tell the story); *Anderson*, 1989 WL 206431, *16 (C.D.

8  Cal. 1989) (two propaganda speeches by a Soviet official were not the same); *Anderson v.

9  Paramount Pictures, Corp.*, 617 F.Supp. 1, 2 (D.C. Cal. 1985) (dialogue was not similar even

10  though works used common and stereotypical phrases and terms).  Plaintiff does not dispute that

11  "Nemo's" dialogue is detailed and developed, and there is little dialogue in either version of

12  "Squisher."  Nor does Plaintiff dispute that "Nemo" is not a musical, and that much of "Squisher"

13  is devoted to characters singing.

14      Plaintiff argues the dialogue is similar because the characters talk about the so-called

15  "themes" of amazement of the ocean and friendship.  (Opp. 9)  She does not cite any authority

16  holding that discussions about the same themes, even if of different lengths, styles, and words,

17  constitute similar dialogue.  (*Id.*)  Moreover, she incorrectly characterizes the themes discussed by

18  the characters.  In the beginning of "Nemo," Marlin says "wow" when looking at the view from

19  his new home.  (Ex. U.)  But, after Coral's tragic death, Marlin is not amazed by the ocean; he is

20  afraid of it.  (*Id.*)  His expressions about his surroundings are of fear, not awe.  (*Id.*)  Similarly,

21  Nemo does not express wonder about his surroundings.  (*Id.*)  He shows excitement to start school

22  and gain independence from his father, but says nothing about exploring the ocean.  (*Id.*)  Nor

23  does the characters' dialogue reflect the theme of friendship.  Before Nemo's capture, Marlin talks

24  about protecting Nemo and Nemo talks about growing up and gaining independence.  (*Id.*)  After

25  Nemo's capture, this dialogue is about finding each other.  (*Id.*)  Although Marlin and Nemo make

26

27

28

-9-

1    friends in the film, the dialogue tells the story and theme of the father-son relationship.  (*Id.*)[8]

2    "Squisher" and "Nemo" are completely different works, and even the few similarities that

3    may exist are wholly unprotected.  Plaintiff's copyright claim fails.

4    **II.      PLAINTIFF'S SECTION 17200 CLAIM IS PREEMPTED.**

5    Plaintiff's § 17200 claim should also be dismissed with prejudice because it is preempted

6    by the Copyright Act.  *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir. 1998);

7    *Goldberg v. Cameron*, 482 F.Supp.2d 1136, 1151 (N.D. Cal. 2007).  Plaintiff does not dispute that

8    her work falls within the "subject matter" of the Copyright Act (Opp. 10-11), and she concedes

9    there is no fraudulent misrepresentation.  (*Id.* 10-14)  She argues only that her claim survives

10   preemption because she alleges a breach of confidence.  (*Id.*)  This is flatly wrong.

11   Like she did with her "Squisher" story, Plaintiff adds non-existent facts to her letter to

12   Disney Press to try and survive Defendants' motion to dismiss.  *The cover letter Plaintiff attached*

13   *to her Opposition does not say her work is confidential, does not ask for payment, and does not*

14   *give Defendants the opportunity to reject her work before she submitted it.*  (Thomas Dec., Ex. A.)

15   The cover letter therefore contradicts any assertion that Plaintiff communicated to Defendants the

16   confidential nature of her work, her expectation of payment, and that her story was "original and

17   novel."  (Opp. 12)  Where "a plaintiff attaches documents and relies on their contents to form the

18   basis of a claim, dismissal is appropriate if the document negates the claim."  *Saunders v. Knight*,

19   2006 WL 224426 (E.D. Cal. 2006); *Temple v. Adams*, 2006 WL 2454275 (E.D. Cal. 2006).

20   A breach of confidence claim arises when an idea is offered to another in confidence and is

21   voluntarily accepted by the offeree in confidence, with the understanding that it will not be

22   disclosed to others.  *Faris v. Enberg*, 97 Cal.App.3d 309, 323 (1979).  "*[A] confidential*

23   *relationship will not be created from the mere submission of an idea to another.*"  *Id.* (emphasis

24   _____

25   [8]  Plaintiff also contends that the dialogue in the two works is similar because Mr. Ray and her
Glen both sing songs describing the various reef species.  (Opp. 9)  This misrepresents Mr. Ray's

26   song.  His song is not dialogue -- it is background music.  He sings when he takes his class on a
field trip, but the lyrics are barely audible.  This is very different from Glen's song, which is a

27        (footnote continued)

28

1    added).  Evidence of communication of the submission's confidentiality, or evidence from which a

2    confidential relationship can be inferred, is necessary.  *Id.*  Courts also require that a recipient of a

3    literary work have actual knowledge of its confidentiality *before* receiving the submission and that

4    the recipient have an opportunity to reject plaintiff's terms.  *Davies v. Krasna*, 245 Cal.App.2d

5    535, 547 (1966); *Tele-Count Engineers, Inc. v. Pacific Telephone and Telegraph Co.*, 168

6    Cal.App.3d 455, 464 (1985); *Balboa Ins. Co. v. Trans Global Equities*, 218 Cal.App.3d 1327,

7    1345 (1990); *Aliotti v. R. Dakin & Co.*, 831 F.2d 898 (9th Cir. 1987).

8         Plaintiff does not allege she communicated the confidential nature of her work to

9    Defendants, that Defendants understood and agreed to keep it confidential, that she told

10   Defendants she expected payment for use of her work, or that Defendants had the opportunity to

11   reject her terms before she submitted her work.  *Fatally, Plaintiff's cover letter confirms the*

12   *opposite.*  Plaintiff unilaterally submitted her work to Defendants under un-communicated terms

13   she wished they would accept.  (FAC, ¶ 18-20.)

14        Plaintiff argues a confidential relationship may be inferred because her work was protected

15   by reasons of novelty or elaboration.  (Opp. 11)  Yet, she fails to allege her work was sufficiently

16   novel or elaborate.  Even if she did, a bare allegation, without an understanding between the

17   parties that the work would be kept confidential, would not suffice.  *Tele-Count*, 168 Cal.App.3d

18   at 464.  A mutual understanding of confidentiality is essential.  *Id.* ("the gravamen of the tort is an

19   understanding between the parties that an idea is offered upon a condition of confidence").  Such

20   an understanding cannot arise "absent 'evidence of knowledge of confidence.'"  *Id.* at 465.

21   Plaintiff's letter reveals the opposite to be true. (Thomas Dec., Ex. A.)[9]

22   _____

23   significant part of the "Squisher" dialogue.  Glen's song is an entire page of Plaintiff's 11-page
     work.  The two songs are not similar.

24    [9] Plaintiff argues no specific form of notice of confidentiality is required, citing *Thompson v.*

25   *California Brewing Co.*, 150 Cal. App. 2d 469 (1957).  (Opp. 11)  She acknowledges, however,
     there must be objective circumstances to demonstrate the recipient knew of the novelty of the idea

26   and confidential disclosure.  (Opp. 11-12)  In *Thompson*, the court's ruling that a confidential
     relationship existed depended on the allegation that defendant *voluntarily* assumed a confidential

27   relationship.  150 Cal.App.2d at 475.  There is no such allegation here, and Plaintiff's limited
     communication with Defendants reveals this was not the case.  (Thomas Dec., Exs. A and C.)

28

1        Citing *Davies*, Plaintiff argues a confidential relationship exists where parties deal on

2    unequal terms.[10]  (Opp. 12)   Yet, unequal bargaining power was not the basis of the *Davies*

3    holding.  The court relied on evidence that plaintiff submitted the work with a reasonable

4    expectation of payment, and defendant accepted it with awareness of plaintiff's expectation.  *Id.* at

5    549.  Plaintiff cannot so allege here in light of her letter.  She cannot cite a single case in which a

6    breach of confidence was based on the parties' power disparity.  Subsequent decisions relying on

7    *Davies consistently* require an understanding between the parties that the work would remain

8    confidential, even when their bargaining power was unbalanced.  *Tele-Count*, 168 Cal.App.3d at

9    464; *Balboa Ins.*, 218 Cal.App.3d at 1345; *Aliotti*, 831 F.2d 898; *Idema v. Dreamworks*, 162

10   F.Supp.2d 1129, 1190-91 (C.D. Cal. 2001); *Design Art v. Nat'l Football League Prop.*, 2000 WL

11   33151646 (C.D. Cal. 2000); *Anderson*, 1989 WL 206431.  Even when the defendant is an

12   entertainment "giant," courts will find no breach of confidence.  *Idema*, 162 F.Supp.2d 1129

13   (Dreamworks); *Anderson*, 1989 WL 206431 (Sylvester Stallone and MGM).[11]

14       Plaintiff also argues Defendants cannot claim they did not have an opportunity to reject her

15   work (Opp. 13), and asserts that the crux of her case is that Defendants claimed to reject her work

16   while using it without payment.  (*Id.*)  However, to charge Defendants with having voluntarily

17   assumed the obligation to maintain the confidentiality of the disclosed work, they must have had

18   an opportunity to reject the work *before* submission.  *Tele-Count*, 168 Cal.App.3d at 465.  They

19   

----

20   [10] Plaintiff oddly contends Defendants' citation to *Davies* supports her arguments, but does not
explain how.  She does not allege a pre-existing relationship of trust or confidence, that

21   Defendants agreed to hold her idea in confidence, or that Defendants impliedly agreed not to use
her work or disclose it to others.

22   [11] Even in cases involving confidential relationships outside the breach of confidence realm, a

23   weaker party cannot unilaterally transform a relationship into a confidential one simply by placing
trust and confidence in a stronger party.  The weaker party must have a *justification* for doing so.

24   *See, e.g., Patriot Scientific Corp. v. Korodi*, 2007 WL 1558510, *12 (S.D. Cal. 2007) (dismissing
breach of confidential relationship claim because there was no justification for plaintiff to put trust

25   and confidence in the defendant).  The relationship must be voluntarily accepted by the stronger
party and it "is not created simply by the receipt of confidential information."  *Strawflower Elec.,*

26   *Inc. v. Radioshack Corp.*, 2005 WL 2290314, *4 (N.D. Cal. 2005).  Plaintiff's contention that a

27   confidential relationship existed between her and Defendants is based on this soundly rejected
theory.

28

1   did not, and indeed there were no communications before the work was submitted.[12]

2       For each of these independent reasons, Plaintiffs' § 17200 claim fails.

3   **III.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTES OF LIMITATIONS**

4       **A.    Plaintiff's Copyright Infringement Claim is Time-Barred.**

5       Plaintiff saw "Nemo" on June 6, 2003 (FAC ¶ 27), and she does not dispute "Nemo" was

6   released on DVD/VHS on November 4, 2003 (Exs. M-S; Opp. 2-3), or that this event was the

7   subject of massive, national publicity.  (*Id.*)  Indeed, Plaintiff does not claim that she did not know

8   of the DVD/VHS release in November 2003, and concedes that all infringing acts before May 29,

9   2004 are barred.  (*Id.*)  Significantly, Plaintiff concedes that she delayed before filing suit (*id.*, at

10  4), which flatly bars her infringement claim based on the "Nemo" theatrical *and* DVD/VHS

11  releases.  *Polar Bear Prod., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004) (cause of action

12  accrues when copyright holder "has knowledge of a violation or is chargeable with such

13  knowledge"); *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir. 1994)(same).

14      Plaintiff instead argues this is a case of continuing infringement, such that "an action may

15  be brought for all acts that *occurred* within the three years preceding the filing of the suit."  (Opp.

16  2) (emphasis added.)  She misstates the rule.  "[A]n action may be brought for all acts that *accrued*

17  within the three years preceding the filing of the suit."  *Roley*, 19 F.3d at 481 (emphasis added).

18

19  ─────────────────────

20  [12] Plaintiff finally contends her work is distinguishable from that in *Anderson v. Stallone*
    because the story there was not novel or unique.  (Opp. 13)  Her bare allegation that "Squisher" is

21  novel and original does not distinguish her case because she did not explain this to Defendants, tell
    them to keep it confidential, ask for payment, and give them an opportunity to reject her terms.

22  Also misplaced is Plaintiff's argument that *Idema* is distinguishable because she does not rely
    solely on a "confidentiality" marking.  (Opp. 13)  Unlike the plaintiff in *Idema*, Plaintiff did not

23  give Defendants any indication her work was confidential – not even a confidentiality stamp.
    Accordingly, if plaintiff in *Idema*, who provided such an indication, failed to state a breach of

24  confidence claim, then Plaintiff certainly fails too.  Plaintiff further argues *Design Art* is
    distinguishable because she did not only allege breach of an implied obligation not to copy.  (Opp.

25  14)  The allegations in *Design Art* are, however, comparable to those here.  The plaintiff alleged an

26  implied obligation not to copy existed when it transmitted a work in confidence.  Failing to allege
    she informed Defendants of her work's confidentiality and her expectation of payment, Plaintiff's

27  allegations are simply that Defendants had an implied obligation not to copy, and her claim fails.
    *Design Art*, 2000 WL 33151646.

28

1   Plaintiff's claim *accrued* when she had knowledge of the violation, that is, when she saw the

2   film—June 6, 2003—and when she knew of its DVD/VHS release—November 2003.

3         Plaintiff further contends that each showing or sale of "Nemo" constitutes a separate act of

4   infringement with a separate accrual date.  (Opp. 2)  This is wrong.  *Roley* and *Kourtis v.*

5   *Cameron*, 419 F.3d 989 (9th Cir. 2005), cited by both parties, determined when the causes of

6   action accrued based on *the initial release dates of the films at issue.  Roley*, 19 F.3d at 480-81;

7   *Kourtis*, 419 F.3d at 999-1000.  That date was dispositive.  (*Id.*)  *Danjaq LLC v. Sony Corp.*, 263

8   F.3d 942 (9th Cir. 2001), held the DVD release of a film was a separate act of infringement from

9   the theatrical release; it did not hold that each DVD sale was a separate act of infringement.[13]

10        Plaintiff's copyright claim based upon merchandising and live performances is also time-

11  barred.  After viewing "Nemo" in June 2003, and after it became the best-selling first-run DVD of

12  all time, Plaintiff cannot reasonably claim she did not discover Defendants' typical follow-up

13  merchandising and live performances.  *Polar Bear*, 384 F.3d at 706-07; *Bridgeport Music, Inc. v.*

14  *Robert Hill Music*, 2006 WL 3720348, *9 (M.D. Tenn. 2006).  Although Plaintiff argues, without

15  explanation, that *Polar Bear* and *Bridgeport Music* do not support Defendants' argument that her

16  delay was unreasonable (Opp. 4), she does not dispute that these cases provide that a plaintiff has

17  a duty to exercise reasonable diligence to discover all products containing the alleged

18  infringement.  *Polar Bear*, 384 F.3d at 706-07; *Bridgeport Music*, 2006 WL 3720348, at *9.  Nor

19  does she try to explain why she waited four years before filing suit, or how she was diligent in

20  investigating products containing the alleged infringement.  (Opp. 4)[14]

21

22

---

23  [13] The only case cited by Plaintiff to support her rolling statute of limitations theory is *Taylor v.*
    *Meirick*, 712 F.2d 1112 (7th Cir. 1983), *a case expressly rejected by the Ninth Circuit in Roley*.

24  [14]  Plaintiff argues there is no evidence to establish that none of Defendants' works were
    created, distributed, sold or performed within the limitations period.  (Opp. 4)  There are, however,

25  judicially noticeable news articles showing that Defendants, as is typical, began merchandising

26  before the theatrical release.  With respect to merchandise introduced in the three years before
    May 29, 2007, Plaintiff's claim is barred because she was on notice of the potential infringement

27  when she saw the film in June 2003, and certainly no later than November 2003, when the DVDs
    hit the market nationwide.  Having purposefully stalled before filing, she should not be permitted

28         (footnote continued)

1         Plaintiff finally argues that her delay was not inequitable because it was not as egregious as

2    that in *Danjaq*.  (Opp. 4)  Although the delay in *Danjaq* was 16-19 years, this does not mean

3    Plaintiff's delay was reasonable.  In *Danjaq*, plaintiff could not have expected infringement of his

4    work on DVD and VHS when the films were released because those media were not available yet.

5    His claim was nevertheless barred.  Plaintiff should have expected DVD/VHS and merchandising

6    releases based on "Nemo" because that is inherent in the feature animation industry.  Yet, she still

7    waited four years before filing suit, which is far more egregious than the delay in *Danjaq*.

8         **B.**    **Plaintiff's Section 17200 Claim is Time-Barred.**

9         The statute of limitations began running on Plaintiff's § 17200 claim when she knew or

10   should have known of Defendants' alleged use of "Squisher."  *Mass. Mut. Life Ins. Co. v. Sup. Ct.*,

11   119 Cal.App.4th 1282, 1295 (2002).  This was before the general theatrical release of "Nemo."

12   (Exs. A-L.)  Plaintiff contends Defendants must show (1) she read the publications attached to the

13   Roberts Declaration or was likely to have done so, and (2) the publications contained sufficient

14   information about the film to put her on notice that her work was copied.  (Opp. 15)  Plaintiff cites

15   *Polar Bear* for this proposition, but it says nothing of the sort.  (*Id.*)  It is irrelevant whether

16   Plaintiff *actually* read the attached articles; what is relevant is whether a reasonable person would

17   have discovered the basis for her claim before the film's release.  *Mass. Mut. Life Ins. Co. v. Sup.*

18   *Ct.*, 119 Cal.App.4th at 1295.  The attached articles show "Nemo's" plot and characters were

19   publicized before May 30, 2003.  (*See* Exs. H-J.)  Further, Defendants ran trailers nationwide

20   before other movies and on television before the release.  Consequently, Plaintiff had constructive

21   knowledge of the alleged copying before May 30, 2003.

22                   **Conclusion**

23        For the foregoing reasons, this Court should dismiss Plaintiff's FAC with prejudice.

24

25

26   _____

27   to proceed with stale claims.  *Danjaq*, 263 F.3d 942; *Chirco v. Crosswind Communities, Inc.*, 474

28   F.3d 227 (6th Cir. 2007).

1    DATED:  January 17, 2008              QUINN EMANUEL URQUHART OLIVER &
                                           HEDGES, LLP
2

3                                          By  /s/ Claude M. Stern
4                                              Claude M. Stern
                                               Attorneys for Defendants The Walt Disney
5                                              Company, Walt Disney Pictures, Disney Book
                                               Group, LLC, Pixar, and Disney Enterprises, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28