QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Claude M. Stern (Bar No. 96737)
  claudestern@quinnemanuel.com
  Evette D. Pennypacker (Bar No. 203515)
  evettepennypacker@quinnemanuel.com
  Andrea Pallios Roberts (Bar No. 228128)
  andreaproberts@quinnemanuel.com
555 Twin Dolphin Drive, Suite 560
Redwood Shores, California 94065-2139
Telephone:   (650) 801-5000
Facsimile:   (650) 801-5100

Attorneys for Defendants The Walt Disney Company, Walt Disney Pictures, Disney Book Group, LLC, Pixar, and Disney Enterprises, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| Deborah J. Thomas,<br><br>        Plaintiff,<br><br>    vs.<br><br>The Walt Disney Company, Walt Disney Studios, Disney Press, Pixar Animation Studios, Walt Disney Feature Animation, Walt Disney Pictures, Disney Enterprises, Inc., and DOES 1 through 100, Inclusive,<br><br>        Defendants. | CASE NO. 4:07-cv-4392<br><br>**RESPONSE TO PLAINTIFF'S OBJECTIONS TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

Plaintiff's objections to Defendants' Request for Judicial Notice in Support of Defendants' Motion to Dismiss Plaintiff's First Amended Complaint are without merit. Each of the facts set forth in Defendants' Request are generally known or "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. As a general matter, Plaintiff's objections should be disregarded because she misunderstands the facts of which Defendants ask the Court to take judicial notice. Plaintiff repeatedly objects to the Court taking judicial notice of the contents of articles and press releases attached to the Roberts

76171/2202296.1

RESPONSE TO PLAINTIFF'S OBJECTIONS TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Declaration. But, Defendants simply request that the Court take judicial notice of the publicity surrounding "Finding Nemo," as evidenced by the articles and press releases attached to the Roberts Declaration. Each of Plaintiff's objections is addressed below:

1. Defendants ask that the Court take judicial notice that "Finding Nemo" and its general plot, story line and characters, was publicized before its May 30, 2003 general release, as reported in Exhibits A-I of the Roberts Declaration. Plaintiff objects, claiming that this is not a fact, but an opinion subject to reasonable dispute. The Court, however, may take judicial notice of adjudicative facts such as those appearing in newspapers. *Crowder v. Kitagawa*, 81 F.3d 1480, 1491 n.10 (9th Cir. 1996) (courts may take judicial notice of adjudicative facts appearing in newspapers); *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454, 458 (9th Cir. 1995) (taking judicial notice of existence of corporate layoffs based upon newspaper articles); *Gomez-Vigil v. INS*, 990 F.2d 1111, 1115 (9th Cir. 1993) ("I will take judicial notice of the existence of accounts in leading newspapers stating that former Sandinistas control the Nicaraguan army and police forces"); *Cochran v. NYP Holdings, Inc.*, 58 F.Supp.2d 1113, 1123 (C.D. Cal. 1998) (taking judicial notice of "overwhelming deluge of publicity attendant to" the O.J. Simpson trial). Plaintiff does not and cannot explain why these cases do not apply to the articles attached as Exhibits A-I to the Roberts Declaration.

Plaintiff further asserts that these exhibits do not publicize "Finding Nemo's" general plot, story line, and characters. This is false. Exhibit D, a March 6, 2003 *USA Today* article, states: "[d]ue in theaters May 30, Nemo features the voices of Albert Brooks and Ellen DeGeneres in the story of a widower clown fish who tries to find his only son after the small fry is abducted by an Australian dentist for his aquarium." Exhibit H, a May 25, 2003 *Los Angeles Times* article, explains that "Finding Nemo" is the story of the plucky orange-and-white-striped clownfish, kidnapped from his home in the Great Barrier Reef. Exhibit I, a May 26, 2003 *Time Magazine* article, describes:

> Long before Nemo comes along, Marlin is a fussy little anxiety machine. When he learns he's to be a father -- of 400 baby clown fish -- he fidgets: 'What if they don't like me?' But he's right to be concerned for his brood in the fish-eat-fish world of Australia's Great Barrier Reef. A shark devours Marlin's wife and 399 of her eggs. That leaves little Nemo (Alexander Gould) -- the one survivor, handicapped with

76171/2202296.1

-2-
RESPONSE TO PLAINTIFF'S OBJECTIONS TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

an underdeveloped fin -- and Marlin, burdened with an overdeveloped sense of dread. When Nemo is old enough for fish school, Dad's pessimism is again validated: the lad defiantly swims into open water, where he is scooped up by an angler -- a dentist, with an aquarium in his office and a nasty, piscicidal little niece he can't wait to give this cute clown fish to. Marlin, who must now conquer his own fear of the great wet world, that 'swirling vortex of terror,' has a companion in his search: Dory (Ellen DeGeneres), a blue tang with a sunny disposition and a short-term memory problem. In their hunt for Nemo, they are aided and threatened by all manner of sea creatures: a menacing anglerfish, some not entirely trustworthy members of Sharks Anonymous, a school of shocking jellyfish and a family of surfer-due sea turtles. In captivity, Nemo finds his own friends: Peach, the starfish (Allison Janney), and the tank commander Gill (Willem Dafoe), a tough who mutters, 'Fish ain't meant to be in a box.'

Exhibit J, a January 7, 2003 press release, comments:

*Finding Nemo* follows the comedic and eventful journeys of two fish - Marlin and his son Nemo - who became separated in the Great Barrier Reef when Nemo is unexpectedly taken far from home and thrown into a fish tank in a dentist's office overlooking Sydney harbor. Buoyed by the companionship of a friendly-but-forgetful fish named Dory, the overly cautious father embarks on a dangerous trek and finds himself the unlikely hero of an epic journey to rescue his son - who hatches a few daring plans of his own to return safely home.

Exhibit L also provides a description of the plot line and characters in the film. This Court may therefore take judicial notice that "Finding Nemo's" plot, story line and characters were publicized before its theatrical release, as evidenced by Exhibits A-I.

      2.     Defendants ask the Court to take judicial notice that "Finding Nemo" was advertised in trailers preceding other movies and in television commercials in advance of its general release on May 30, 2003, as is generally done for major motion pictures. Plaintiff claims that this is subject to dispute, not generally known, and not capable of accurate determination by resort to sources whose accuracy cannot be questioned. However, it *is* generally known that trailers for major motion pictures permeate television and movie theaters before their theatrical release. This is especially true for motion pictures from major entertainment companies like Disney. Indeed, one can already view trailers for Disney and Pixar's next film about a robot's adventures traveling across the universe, "Wall· E," which will not be released until Summer 2008. (*See* http://www.slashfilm.com/2007/10/01/new-wall-e-movie-trailer/.) Based upon this generally known practice, the Court may take judicial notice that "Finding Nemo" trailers were shown before its theatrical release. Fed. R. Evid. 201.

76171/2202296.1

-3-
RESPONSE TO PLAINTIFF'S OBJECTIONS TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

1        3.     Defendants ask the Court to take judicial notice of the fact that before "Finding Nemo" was generally released, it was publicized that Defendants would develop video games based on the film, as reported in Exhibits J and K to the Roberts Declaration. Plaintiff objects claiming that this is not generally known and not capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. The Court, however, may take judicial notice of the existence and contents of websites. *See Lund v. Luprino*, 2007 WL 1775474, *1 n.3 (E.D. Cal. 2007) ("[T]he court will grant judicial notice of the two documents on the state Emergency Services' website"); *Caldwell v. Caldwell*, 420 F. Supp. 2d 1102, 1105 n.3 (N.D. Cal. 2006) (granting request to take judicial notice of two sets of web pages); *Pollstar v. Gigmania*, 170 F.Supp.2d 974, 978 n.2 (E.D. Cal. 2000) ("[T]he Court may take judicial notice of the printout of the web site for the limited purpose of evaluating the online license agreement."); *Hendrickson v. eBay, Inc.*, 165 F.Supp.2d 1082, 1084 n.2 (C.D. Cal. 2001) ("To the extent some of the descriptions about eBay's website are not in the record, the Court takes judicial notice of www.eBay.com and the information contained therein...."); *Cairns v. Franklin Mint Co.*, 107 F.Supp.2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of Andy Warhol's Internet site even though it was not submitted by any party). Plaintiff does not and cannot explain why these cases do not apply to the press releases attached as Exhibits J and K to the Roberts Declaration.

Plaintiff also asserts that Exhibits J and K do not establish that the general public was aware of these press releases. But, Defendants are not asking the Court to take judicial notice that the general public was aware of the press releases. Rather, the Court should take judicial notice of the fact that Defendants, through these press releases, publicized that they would develop video games based on "Finding Nemo."

        4.     Defendants ask the Court to take judicial notice of the fact that before the May 30, 2003 release of the film "Finding Nemo," Defendants publicized that they planned an extensive marketing campaign in connection with the film, as reported in Exhibit K to the Roberts Declaration. Plaintiff objects, again claiming that this is not a generally known fact and is not capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. As explained above, Plaintiff does not and cannot dispute that the Court may take

76171/2202296.1

-4-

RESPONSE TO PLAINTIFF'S OBJECTIONS TO REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

judicial notice of the contents of a website. *See Lund*, 2007 WL 1775474 at *1 n.3; *Caldwell*, 420 F.Supp.2d at 1105 n.3; *Pollstar*, 170 F.Supp.2d at 978 n.2; *Hendrickson*, 165 F.Supp.2d at 1084 n.2 ; *Cairns*, 107 F.Supp.2d at 1216. Further, Plaintiff's contention that Exhibit K fails to establish that Defendants engaged in an extensive marketing campaign is irrelevant. Defendants merely ask the Court to take judicial notice that Defendants *publicized* their intent to engage in an extensive marketing campaign. Such publication is evidenced by Exhibit K.

5. Defendants ask the Court to take judicial notice of the fact that "Finding Nemo" was released on DVD on November 4, 2003, as reported in Exhibits M and N to the Roberts Declaration. Plaintiff objects, saying that the articles mention that the film was released on DVD and VHS, but do not state the release date. The release date, however, is capable of accurate determination by resort to the articles attached to the Roberts Declaration. As explained in paragraph 21 of the Roberts Declaration, Exhibit M is dated November 7, 2003 and announces that "Finding Nemo" was released on DVD the previous Tuesday. November 7, 2003 fell on a Friday, so the previous Tuesday was November 4, 2003. Exhibit N is dated November 18, 2003 and announces that "Finding Nemo" was the biggest selling DVD in just two weeks. Exactly two weeks before November 18 (14 days) was November 4, 2003. Finally, also attached to the Roberts Declaration is Exhibit R, which is dated November 5, 2003 and announces that "Finding Nemo" sold 8 million units in its first day. One day before November 5 was November 4, 2003. Based upon the dates of the various articles attached to the Roberts Declaration and the articles' description of the DVD release date, the Court can calculate and take judicial notice that the DVD release date was November 4, 2003.

6. Defendants ask the Court to take judicial notice of the fact that the success of the release of "Finding Nemo" on DVD was publicized in November 2003, as reported in Exhibits M-S to the Roberts Declaration. Plaintiff objects, saying this is subject to dispute, not generally known, and not capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned. As explained above, the Court may take judicial notice of adjudicative facts appearing in newspapers. *Crowder*, 81 F.3d at 1491; *Ritter*, 58 F.3d at 458; *Gomez-Vigil*, 990 F.2d at 1115; *Cochran*, 58 F.Supp.2d at 1123. Plaintiff further argues that Exhibits M-S do

not establish that the general public knew anything of the success of the "Finding Nemo" DVD release. Once again, Plaintiff misconstrues Defendants' request. Defendants ask that the Court take judicial notice that the success of the "Finding Nemo" DVD release was publicized, as evidenced by Exhibits M-S, not that "the general public knew anything of the purported success of the DVD."

7. Plaintiff concludes her objections by arguing that Defendants improperly ask the Court to take judicial notice of the articles and websites attached to the Declaration and the content within each article. She claims such a request is inappropriate because the content in the articles do not necessarily support the facts asserted, the articles are subject to varying interpretation, the articles are hearsay, and the accuracy of the content of the articles can reasonably be questioned.

These objections evidence Plaintiff's misunderstanding of Defendants' request for judicial notice. Defendants do not ask the Court to take judicial notice of the *contents* of the articles and press releases as facts, but rather that "Finding Nemo's" plot, characters, merchandising, and success, were publicized, as evidenced by the articles and press releases. Thus, for example, Defendants do not ask the Court to take judicial notice of the fact that "Finding Nemo" was the best-selling first-run DVD. Rather, Defendants ask the Court to take judicial notice that it was *publicized* in November 2003 that "Finding Nemo" was the best-selling first-run DVD. Similarly, Defendants do not ask the Court to take judicial notice that "Finding Nemo" is the "story of a widower clown fish who tries to find his only son after the small fry is abducted by an Australian dentist for his aquarium." (Roberts Dec., Ex. D.) Rather, Defendants ask the Court to take judicial notice that "Finding Nemo's" plot and story line were *publicized* before its general theatrical release. The articles and press releases therefore are not hearsay because they are not offered as proof of the matters asserted, but to prove their existence. *In re Avista Corp. Securities Litigation*, 415 F.Supp.2d 1214, 1217-18 (E.D. Wash. 2005), cited by Plaintiff, does not hold otherwise. *Avista*, 415 F.Supp.2d at 1217-18 (granting request for judicial notice of charts of daily stock prices). Plaintiff's objections should accordingly be disregarded.

8. Plaintiff does not object to Defendants' request that the Court take judicial notice of Plaintiff's copyright deposit for "Squisher the Fish" (Roberts Dec., Ex. R) and the contents of the

1  motion picture "Finding Nemo" (*id.*, Ex. U), and that deposit should therefore be considered by
2  the Court on Defendants' motion to dismiss.
3     For the foregoing reasons, this Court should disregard Plaintiff's objections and take
4  judicial notice of the documents attached as Exhibits A-S of the Roberts Declaration.
5  DATED:  January 17, 2007          QUINN EMANUEL URQUHART OLIVER &
                                     HEDGES, LLP

                                     By  /s/ Claude M. Stern
                                        Claude M. Stern
                                        Attorneys for Defendants The Walt Disney
                                        Company, Walt Disney Pictures, Disney Book
                                        Group, LLC, Pixar, and Disney Enterprises, Inc.