IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEBORAH THOMAS,<br><br>      Plaintiff,<br><br>   v.<br><br>THE WALT DISNEY COMPANY, WALT DISNEY STUDIOS, DISNEY PRESS, PIXAR ANIMATION STUDIOS, WALT DISNEY FEATURE ANIMATION, WALT DISNEY PICTURES and DISNEY ENTERPRISES, INC.,<br><br>      Defendants.<br>_____/ | No. C-07-4392 CW<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT |

    Defendants The Walt Disney Company, Walt Disney Pictures (also sued as Walt Disney Studios and Walt Disney Feature Animation), Disney Book Group, LLC (sued as Disney Press), Pixar (sued as Pixar Animation Studios), and Disney Enterprises, Inc. move to dismiss the first amended complaint (FAC). Plaintiff Deborah Thomas opposes the motion. The motion was heard on January 31, 2008. Having considered all of the parties' papers and oral argument on the motion, the Court grants Defendants' motion.

BACKGROUND

According to the FAC, during the summer of 2000, Plaintiff created an original literary work titled "Squisher the Fish." FAC ¶ 14. On April 6, 2001, Plaintiff submitted the story to Defendants "for the purpose of selling her work for use as a movie, published book, television show, game or other commercial application." FAC ¶ 18. On June 21, 2001, Defendants returned Plaintiff's story and informed her that it was their business practice not to consider unsolicited outside story submissions. FAC ¶ 23. Plaintiff alleges that during the time Defendants had the story, they copied it and "incorporated it into a movie created, produced, distributed and sold by Defendants entitled 'Finding Nemo.'" FAC ¶ 24.

"Finding Nemo" was first released and shown to the public on May 30, 2003, and Plaintiff first saw the movie on June 6, 2003. FAC ¶¶ 26, 27. Plaintiff alleges that Defendants continued to show "Finding Nemo" domestically and internationally after May 29, 2004 and that sales and rentals of the DVD and videocassette of the movie continued after May 29, 2004. FAC ¶ 28, 30. Further, Plaintiff alleges that "sometime after May 30, 2003, Defendants prepared a video game based on the movie" and sales of that video game continued after May 29, 2004. FAC ¶ 31. Similarly, Defendants "prepared children's books based on the movie" and "made toys and other merchandise based on the story and characters in the movie." FAC ¶¶ 33, 34. Plaintiff alleges that the sales of the books, toys and merchandise continued after May 29, 2004. FAC ¶¶ 33, 34. Finally, Plaintiff alleges that "Defendants have

2

1 prepared live performances based on the movie" which "continued
2 after May 29, 2004." FAC ¶ 34.
3     Plaintiff now seeks relief on two grounds, copyright
4 infringement under the Copyright Act and unfair competition under
5 California Business & Professions Code § 17200.

DISCUSSION

7     Under the Federal Rules of Civil Procedure, a complaint must
8 contain a "short and plain statement of the claim showing that the
9 pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff
10 need not set out in detail the facts upon which it bases its claim;
11 however, the plaintiff must "give the defendant fair notice of what
12 the plaintiff's claim is and the grounds on which it rests."
13 Conley v. Gibson, 355 U.S. 41, 47 (1957); see Bell Atlantic Corp.
14 v. Twombly, 127 S. Ct. 1955, 1964 (2007). All material allegations
15 in the complaint, "even if doubtful in fact," are assumed to be
16 true, id., and are construed in the light most favorable to the
17 plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir.
18 1986).
19     When granting a motion to dismiss, the court is generally
20 required to grant the plaintiff leave to amend, even if no request
21 to amend the pleading was made, unless amendment would be futile.
22 Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911
23 F.2d 242, 246-47 (9th Cir. 1990).
24 I.   Copyright Claim
25     A.   Substantially Similar
26     Defendants argue that Plaintiff fails to state a claim because
27 "Squisher the Fish" and "Finding Nemo" are not substantially

similar. As discussed below, the Court grants Defendants' request for judicial notice of the text of "Squisher the Fish" and the film "Finding Nemo." "There is ample authority for holding that when the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss." Christianson v. West Pub. Co., 149 F.2d 202, 203 (9th Cir. 1945).[1]

To determine whether two works are substantially similar, the Court applies a two part test, examining both "extrinsic" and "intrinsic" components of the works. See Apple Computer, Inc. v. Microsoft Corp., 35 F.3d 1435, 1442-43 (9th Cir. 1994). Although to establish infringement the works must be substantially similar under both tests, the Court may only consider the extrinsic test

---

[1] Both parties have filed requests for judicial notice. Generally, in ruling on a motion to dismiss, a court cannot consider material outside of the complaint. Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994), overruled on other grounds in Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002). However, a court may consider exhibits submitted with the complaint and those documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." Id. at 453-54.

Defendants request that the Court take judicial notice of the copyright deposit for "Squisher the Fish" on file with the United States Copyright Office, the motion picture "Finding Nemo," various newspaper and magazine articles, and a number of press releases published on Pixar's website. While Plaintiff refers to the contents of the movie "Finding Nemo" and the text of "Squisher the Fish" in the complaint, she does not refer to any of the articles or press releases. Therefore, the Court grants Defendants' request for judicial notice of the text of "Squisher the Fish" and the motion picture "Finding Nemo" and denies Defendants' request for judicial notice of the newspaper and magazine articles and of the press releases from the Pixar website. (Docket No. 27).

Plaintiff seeks judicial notice of four facts. However, none of these facts is alleged in the complaint. Moreover, even if true, the facts do not provide a basis upon which the Court would deny Defendants' motion. Therefore, the Court denies Plaintiff's request. (Docket No. 38).

4

because "the intrinsic test, which examines an ordinary person's subjective impressions of the similarities between two works, is exclusively the province of the jury. Funky Films, Inc. v. Time Warner Entertainment Co., L.P., 462 F.3d 1072, 1077 (9th Cir. 2006). The extrinsic test measures objectively, as a matter of law, whether protectable elements of two works are substantially similar in ideas and expression. See Apple Computer, 35 F.3d at 1442. If all of the similarities between the works arise from the use of unprotectable ideas, the plaintiff fails to satisfy the extrinsic test. Kouf v. Walt Disney Pictures & Television, 16 F.3d 1042, 1045 (9th Cir. 1994); Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987).

The extrinsic test turns on specific, external criteria, "which can be listed and analyzed." North Coast Indus. v. Jason Maxwell, Inc., 972 F.2d 1031, 1034 (9th Cir. 1992). Ultimately, only protectable aspects of a work may be considered when determining whether infringement has occurred. See Pasillas v. McDonald's Corp., 927 F.2d 440, 443 (9th Cir. 1991) (copyright holder cannot show substantial similarity of expression between standard elements); Harper House, Inc. v. Thomas Nelson, Inc., 889 F.2d 197, 207-08 (9th Cir. 1989) (infringement decision cannot be based on unprotectable aspects of plaintiff's work). Under the extrinsic test, the Court defines the scope of copyright protection by "analytically dissecting" the alleged similarities between the works and separating protected elements of expression from unprotected ideas. See Apple Computer, 35 F.3d at 1443.

"Protectable expression includes the specific details of an

5

author's rendering of ideas" while "scenes a faire, which flow naturally from generic plotlines, are not protectable." Funky Films, 462 F.3d at 1077. In Funky Films, the court examined the "plot, characters, themes, mood, pace, dialogue [and] sequence of events" in evaluating whether the defendant's television series was substantially similar to the plaintiff's screenplay. Id. at 1078; see also Litchfield v. Spielberg, 736 F.2d 1352, 1356 (9th Cir. 1984) ("The extrinsic test requires a comparison of plot, theme, dialogue, mood, setting, pace, and sequence.").

        1.   Plot

Both "Squisher the Fish" and "Finding Nemo" begin with an egg hatching into a young fish.[2] However, that is one of the few ways in which the plots of the two stories are the same. In "Squisher the Fish," Squisher is hatched and then finds "a hole to call his very own." Pallios Decl., Ex. T at 1. "Finding Nemo" begins with Nemo's mother and father in a new home, excited that they are about to become parents. Roberts Decl., Ex. U.

After Squisher spends the night in his hole, he wakes up curious and hungry. Pallios Decl., Ex. T at 1. He is amazed by the many kinds of fish in the ocean. Id. Squisher introduces himself to a fish named Glen who tells him, "I'd love to help you out, just follow me along the way and we'll eat and sing and play,

---

[2] Plaintiff alleges that she submitted a different version of her story to Defendants than the version that she registered with the copyright office. Thomas Decl. ¶ 2. Plaintiff contends that the version she sent to Defendants includes a sentence about Squisher's parents guarding the egg from which he hatches. Thomas Decl., Ex. B. at 2. However, the version she registered did not include this sentence. Pallios Decl., Ex. T.

6

play, play." Id.  Glen then sings Squisher a song that teaches him about many of the different creatures living in the sea. Id. at 2-3.  Glen also teaches Squisher about love. Id. at 3.  After Glen teaches Squisher about the danger of humans, a diver swims above them. Id.  Glen and Squisher hide in a moray eel's cave. Id.  The eel tries to eat the two fish and chases them until they are able to hide in a tiny hole. Id.

Glen then brings Squisher to the reef cleaning station, "a place where you can work and be safe, there's plenty to eat and many friends you can make." Id. at 4.  At the cleaning station, Glen meets a fish named Mr. Grubbs who has a hole in his fin where a diver speared him. Id.  Squisher also meets and falls in love with a fish named Dot. Id. at 4-5.

Squisher and Dot live together and are "a perfect match." Id. at 5.  One day Squisher and Dot meet Glenn and Emily to search for a new place to play. Id.  While the fish are playing hide and seek, a diver scoops Dot into a net. Id. at 7.  She calls out for help and Squisher also gets caught in the net trying to save her. Id.  The two fish are put in a boat and then put in a tank "[t]o be cared for by humans and protected from harm." Id.  The story closes with Squisher "home at last" and "safe and happy to be protected from harm." Id. at 10.  He is described as "the king of his world, in this public aquarium." Id.

While "Squisher the Fish" focuses on Squisher's discovery of the ocean and his eventual capture by divers, "Finding Nemo," as the title implies, focuses on Nemo's father Marlin's attempts to find Nemo after he is captured by divers.  While Squisher's capture

7

and placement in the aquarium is the culmination of his story, Nemo's capture is the catalyst for his father's adventures, which, together with Nemo's attempts to escape from the fish tank in a dentist's office, are the central plot of the story.

On the most general level, both stories deal with young fish in the ocean that are captured by divers and put in a fish tank. However, courts have consistently held that such basic plot ideas are not protected by copyright law. See, e.g., Cavalier v. Random House, Inc., 297 F.3d 815, 824 (9th Cir. 2002); Berkic v. Crichton, 761 F.2d 1289, 1293 (9th Cir. 1985).

In Cavalier, the Ninth Circuit noted that the parties' works shared "the general premise of a child, invited by a moon-type character, who takes a journey through the night sky and returns safely to bed to fall asleep." 297 F.3d at 824. However, the court held that "basic plot ideas, such as this one, are not protected by copyright law." Id. Similarly, in Berkic, the court noted,

> At a very high level of generality, the works do show a certain gruesome similarity. Both deal with criminal organizations that murder healthy young people, then remove and sell their vital organs to wealthy people in need of organ transplants. To some extent, both works take their general story from the adventures of a young professional who courageously investigates, and finally exposes, the criminal organization.

761 F.2d at 1293. However, the court held, "this degree of similarity between the basic plots of two works cannot sustain a plaintiff's claim that the works are 'substantially similar.'" Id. In fact, the court held, "No one can own the basic idea for a story" because "[g]eneral plot ideas are not protected by copyright

8

1 law." Id. Rather, such ideas "remain forever the common property
2 of artistic mankind." Id.

### 2. Sequence

As described above, Nemo is captured early in "Finding Nemo" and the story revolves around his father's efforts to find him and Nemo's attempts to escape from the fish tank in a dentist's office. The climax of the story occurs when Nemo and his father are reunited. In contrast, Squisher spends the majority of the story exploring the sea, first with his friend Glen, then with his friend Mr. Grubbs and finally with Dot. The climax of Squisher's story is when he is captured and put in the fish tank only to discover that he is happy and safe there.

Plaintiff argues that, despite these differences in the overall storylines, Defendants have copied "the entirety of the fundamental essence and structure of" her work and "Nemo's story cannot begin or end without the Squisher story." Opposition at 8. Plaintiff cites Universal Pictures Co. v. Harold Lloyd Corp., 162 F.2d 354 (9th Cir. 1947), in support of her argument that she can sustain a claim even if the copied portion only constitutes a small portion of Defendants' work. The Universal Pictures court held, "The whole picture need not be copies to constitute infringement;" and, "The mere copying of a major sequence is sufficient." Id. at 361. However, in that case, the court found "57 consecutive scenes lifted almost bodily from the Lloyd product, not just the reproduction of an isolated single incident or event." Id. at 360. Such similarities do not exist here. Further, although it is shorter, Plaintiff's work covers much more of the protagonist's

9

life, hatching, falling in love and discovering that his blue dot is fading as he ages. In contrast, throughout the movie Nemo is a young fish whose father is searching for him.

Plaintiff also argues that specific events in "Finding Nemo" are copied from her story. However, as Defendants point out, Plaintiff's arguments are based on factual misrepresentations of the stories. A comparison of the sequence of events in the two works does not support a finding of substantial similarity.

### 3. Characters

Plaintiff argues that the title characters are both "curious inquisitive" and "cautioned . . . to be wary of dangers." Opposition at 8. However, a young character who is inquisitive and whose curiosity leads him or her into danger "can be considered a stock character." Cavalier, 297 F.3d at 825 (holding that a talking moon is a stock character in children's literature). Further, the fact that both Nemo and Squisher are talking fish "directly flows" from the idea of a young fish discovering the ocean. See id. (talking moon "directly flows from the idea of a journey through the night sky"). Moreover, Plaintiff's description of Squisher is not reflected in any of the physical characteristics of Nemo. Nemo is an orange clownfish with wide eyes and white stripes around his body. Squisher is initially described as a "tiny yellow fish." Roberts Decl., Ex. T. at 1. Later, it is disclosed that he has a "blue circle" marking. Id. at 5.

Plaintiff also notes that Nemo has an injured fin, a characteristic that she argues Defendants copied from her character Mr. Grubbs. Plaintiff further argues that "Defendants like this

10

characteristic so much they used it twice, having Gill, one of the aquarium fish in Nemo, suffer from the same injured fin." Opposition at 8. However, Plaintiff provides nothing to support her argument that an injury is a protectable characteristic and, as Defendants argue, there is no similarity among the injuries. Nemo's fin was deformed from a barracuda attack while he was still an egg; Gill's fin is also deformed but the film does not explain why; Mr. Grubbs' fin was injured when it was pierced by a diver's spear the day before he met Squisher.

Plaintiff's argument that other minor characters in "Finding Nemo" were copied from her story similarly fails. Although Squisher and Nemo's father both meet turtles, the presence of a sea turtle, as in "Finding Nemo," or a loggerhead turtle, as in "Squisher the Fish," can be said to "directly flow" from storylines taking place in the ocean. See Cavalier, 297 F. 3d at 825. Similarly, that Nemo and Squisher would each encounter another character that teaches him about things can reasonably be expected of a story in which a young fish is discovering the ocean. A comparison of the characters does not support a finding of substantial similarity.

    4.   Mood

Defendants also argue that the mood of the two works differs sufficiently to undermine a finding of substantial similarity.[3]

---

[3] Defendants further argue that the pace of the works undermines a finding of similarity, noting that over the course of eleven pages, Squisher grows up and falls in love, while over the course of a feature-length film, "Nemo remains a boy." Reply at 8. However, it is virtually impossible to compare the pace of an eleven page story with that of a feature length film. See Idema v.

11

Defendants argue that "Plaintiff's work does not have a mood" while "'Nemo's' mood is exciting and suspenseful." Reply at 8. Plaintiff characterizes the works differently, arguing that both works have a mood of a "happy, light children's tale" and of "wonderment for the ocean and its inhabitants." Opposition at 10. However, as Defendants argue, Nemo is in danger for much of the film, lending a suspenseful and potentially scary mood. A comparison of the moods of the two works does not support a finding of substantial similarity.

5. Setting

Both stories take place on a reef in the ocean and in a fish tank. However, this "naturally and necessarily flows from the basic plot premise," common to the two stories, of a fish captured from the ocean and put into a fish tank. Cavalier, 297 F.3d at 924. In Williams v. Crichton, the Ninth Circuit found that much more specific "common elements of electrified fences, automated tours, dinosaur nurseries, and uniformed workers were scenes-a-faire that flowed from the concept of a dinosaur zoo." 84 F.3d 581, 589 (9th Cir. 1996). The setting of these works does not support a finding of substantial similarity.

Thus, none of the factors weigh in favor of a finding of substantial similarity between "Squisher the Fish" and "Finding Nemo." Therefore, the Court finds that Plaintiff's copyright claim fails as a matter of law. Because this finding is based on the

---

Dreamworks, Inc., 162 F. Supp. 2d 1129, 1185 (C.D. Cal. 2001) (noting the difficulty of such a comparison "between works which are captured in different media (written word versus film)").

12

works themselves and not on Plaintiff's pleadings, leave to amend would be futile.

B. Time-Bar

Defendants also argue that, even if the works are substantially similar, Plaintiff's copyright infringement claim is time-barred. The parties agree that the statute of limitations for such claims is three years. 17 U.S.C. § 507. Plaintiff does not dispute that she first saw the film on June 6, 2003, almost four years before May 29, 2007, when she filed the original complaint in this case in California state court. However, Plaintiff contends that Defendants continued to show the film in public theaters after May 29, 2004, and that each "theatrical showing constitutes a new act of infringement." Opposition at 2. Further, Plaintiff contends that each sale of a DVD of the film or video game based on the film constitutes a separate act of infringement. Id.

In Roley v. New World Pictures, LTD., the Ninth Circuit held, "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." 19 F.3d 479, 481 (9th Cir. 1994) (citing Wood v. Santa Barbara Chamber of Commerce, Inc., 507 F. Supp. 1128, 1135 (D. Nev. 1980)). In Roley, the plaintiff relied on a "rolling statute of limitations theory" to argue that "so long as any allegedly infringing conduct occurs within the three years preceding the filing of the action, the plaintiff may reach back and sue for damages or other relief for all allegedly infringing acts." Id. The Ninth Circuit rejected that theory but held, "In a case of continuing copyright infringement, an action may be brought for all acts that accrued

13

within the three years preceding the filing of the suit." Id.

Citing Roley, the Ninth Circuit later held, in Kourtis v. Cameron, that a copyright infringement claim based on the release of the film "Terminator II" was time-barred because the plaintiffs alleged that they had learned of the infringement at the time of the release, which was more than three years prior to the date their complaint was filed. 419 F.3d 989, 999 (9th Cir. 2005). However, the Kourtis court noted that "the complaint also alleges several acts of continuing infringement, including the release of "Terminator II" on DVD and the use of the "Minotaur" materials to develop "Terminator III." Id. at 999-1000. Because the plaintiffs had not alleged the dates on which they discovered those acts of continuing infringement, the court held that "it cannot be concluded that the Kourtises' claim is time-barred in its entirety." Id. at 1000. However, the court noted that the defendant could renew its statute of limitations arguments on summary judgment.

Similarly, Plaintiff concedes that she was aware of the alleged infringement based on Defendants' production of "Finding Nemo" as early as June 6, 2003, but has not alleged when she learned of the other acts of continuing infringement. Therefore, Plaintiff's infringement claim based on the initial production of the film is time-barred, but the Court cannot find that her claims based on the other acts of continuing infringement are barred.

Defendants cite Polar Bear Productions, Inc. v. Timex Corp., 384 F.3d 700 (9th Cir. 2004), in support of their argument that even if Plaintiff did not know about the continuing acts, such as

14

the release of the film on DVD and the related video games, merchandise and live performances until May, 2004, she should have. However, in Polar Bear Productions, the Ninth Circuit clearly held that "the date of discovery is an issue of fact." Id. at 707. Therefore, the Court finds only that Plaintiff's claims based on the original production and release of the film must be dismissed as time-barred.

III. California Business and Professions Code § 17200 Claim

Defendants argue that Plaintiff's § 17200 claim is preempted by the Copyright Act because the work involved falls within the "subject matter" of the Copyright Act and the rights Plaintiff asserts under California law are "equivalent" to those protected by the Copyright Act. Kodadek v. MTV Networks, Inc., 152 F.3d 1102, 1212 (9th Cir. 1998).

Plaintiff does not dispute that her story falls within the "subject matter" of the Copyright Act. However, she argues that her unfair competition claim is not equivalent to her copyright infringement claim because she has alleged a breach of confidence. Defendants counter that Plaintiff's breach of confidence allegations fail as a matter of law.

A breach of confidence claim requires a confidential relationship that arises when an idea is offered to another in confidence and is voluntarily accepted by the offeree in confidence. Faris v. Enberg, 97 Cal. App. 3d 309, 322-23 (1979). A plaintiff may raise an inference of a confidential relationship in a number of ways including through "proof that the material submitted was protected by reason of sufficient novelty and

15

elaboration," or proof that she "offered the idea upon condition of confidence and a clear understanding that payment would be made upon use." Id. at 323 (internal citations and quotations omitted).

Plaintiff alleges that "Defendants knew or should have known that Plaintiff's story submission was in confidence." FAC ¶ 21. However, the cover letter Plaintiff sent to Defendants along with her story does not state that the manuscript is being offered in confidence.[4] See Thomas Decl., Ex. A. The cover letter also fails to provide a clear basis from which to infer that Plaintiff expected payment if her story was used. The letter simply states, "I feel there is potential for this to be sold along with a cassette tape for young readers as it sounds good when read aloud" and "I certainly hope that we can work together as I believe that this is a book with great potential." Id. Neither of these statements supports an inference of a confidential relationship between Plaintiff and Defendants. Plaintiff also argues that her cover letter "communicat[ed] to Defendants that her story was original and novel." Opposition at 12. However, nothing in the letter supports such a finding.

Moreover, the cases Plaintiff cites in support of her argument do not support a finding of a confidential relationship. In Faris, the defendant Enberg agreed to meet with the plaintiff Faris to discuss Faris's idea for a sports show. 97 Cal. App. 3d at 314.

---

[4] Because Plaintiff refers to this cover letter in her complaint, supplies a copy of the letter and does not allege any other communication between the parties, the Court may rely on the letter to dismiss her claim. Indeed, at the hearing Plaintiff's counsel confirmed that there was no other communication between the parties.

16

At that meeting, Enberg requested and Faris gave him a copy of his registered format of the idea. Id. at 315. Faris told Enberg that "it was his 'creation' and 'literary property.'" Id. Further, Faris "discussed [his] show and Mr. Enberg's participation as a business proposal or offer." Id. Nevertheless, the California court held that "no rational receiver of the communications from Faris could be bound to an understanding that a secret was being imparted." Id. The Faris court clearly stated, "We do not believe that the unsolicited submission of an idea to a potential employee or potential business partner, even if that person then passes the disclosed information to a competitor, presents a triable issue of fact for confidentiality." Id. This case does not support a finding of a confidential relationship where, as here, Plaintiff alleges that she submitted an unsolicited work to Defendants, which was then returned with a cover letter stating that Defendants do not accept such submissions.

While the California Court of Appeal found a confidential relationship in Thompson v. California Brewing Company, that case is clearly distinguishable from Plaintiff's. There, the plaintiff alleged that he submitted his "new and novel" idea "at defendants' special instance and request." 150 Cal. App. 2d 469, 472 (1957). Further, the plaintiff alleged that the defendants had "expressly and orally agreed to pay to plaintiff the reasonable value of such new and novel idea if and when the defendants, or any of them, used the same." Id. Although the letter by which the plaintiff disclosed his idea to the defendants did "not of itself indicate any element of confidence in the relationship," the court

17

nonetheless found the allegations of a confidential relationship sufficient because the plaintiff "alleged the voluntary assumption of such a relationship by the defendants." Id. at 474.  Further, the Thompson court relied on the fact that the defendants there were "looking for 'ideas.'"  Id. at 475.  Unlike the plaintiff in Thompson, Plaintiff here has no basis other than her letter to establish any such voluntary assumption.

Similarly, Plaintiff quotes dicta in Davies v. Krasna, where the California Court of Appeal quoted a law review article that stated that even when a traditional relationship giving rise to a confidential relationship does not exist, "courts will tend to find a confidential relationship when the parties deal on unequal terms resulting in one party reposing trust and confidence in the other's good faith."  245 Cal. App. 2d 535, 548 (1966) (quoting Nimmer, The Law of Ideas, 27 So. Cal. L. Rev. 119, 138-40 (1954)).  However, there, as in Thompson, the court only found a confidential relationship where the plaintiff alleged the "voluntary assumption of such a relationship by the defendants."  Id. (quoting Thompson, 150 Cal. App. 2d at 475).

California law clearly requires "understanding or voluntary acceptance of the confidential disclosure" on Defendants' part.  Tele-Count Eng'rs v. Pac. Tel. & Tel. Co., 168 Cal. App. 3d 455, 465 (1985).  The content of Plaintiff's cover letter, together with Defendants' return of her submission without review belies any such understanding or acceptance.

Plaintiff has not adequately plead a confidential relationship.  Therefore, her § 17200 claim is equivalent to her

18

infringement claim and preempted by the Copyright Act.  Further, Defendants' "knowledge of the confidential nature of information must precede its disclosure."  Id.  Unless Plaintiff could plead any other communication between herself and Defendants that occurred prior to her submission of her story with the cover letter, there is no basis upon which such knowledge could be found.  Plaintiff indicates that she cannot do so.  Therefore, the Court dismisses with prejudice Plaintiff's § 17200 claim.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss the FAC (Docket No. 32).  Because amendment would be futile, the dismissal is with prejudice.  The Clerk shall enter judgment in favor of Defendants and close the file.  Each party shall bear its own costs.

IT IS SO ORDERED.

Dated: 2/14/08

CLAUDIA WILKEN
United States District Judge

19